# CASES DETERMINED

## *January Term, 1877.*

STATE VS. DICKINSON.

CRIMINAL LAW: EVIDENCE. *Producing death of pregnant woman by drugs, etc. (1) Proof of statements of deceased when visiting defendant. (2) Dying declarations of deceased when about to visit defendant. (3) Nature of the offense at common law and by statute.*

1. In a criminal action for producing the death of a pregnant woman by administering drugs or using an instrument upon her for the purpose of destroying the child, where it was shown that the deceased, shortly before her death, visited defendant's house, the court admitted evidence of conversations between the deceased and the witness, occurring about the time of such visits, in relation to the object for which they were made, but instructed the jury that they could consider such testimony only as it tended to show the purpose or intention with which the deceased visited the defendant, and not as evidence that defendant actually performed the acts charged. *Held*, that there was no error; proof of such visits being clearly admissible, and the other facts testified to being contemporaneous with the visits, and so connected with them as to illustrate their character, and being therefore a part of the *res gestæ.*

2. In prosecutions for any form of homicide, the dying declarations of the person whose death is the subject of the charge, in respect to the circumstances of the death, are admissible in evidence, notwithstanding the clause in the bill of rights which secures to the accused the right to "meet the witnesses face to face."

3. At the common law, the unlawful use of instruments or drugs upon a pregnant woman, though with her consent, for the purpose of producing an abortion, if it resulted in her death, was *murder;* while the statute reduces the crime to manslaughter in the second degree.

State *vs.* Dickinson.

REPORTED from the Circuit Court for *Green* County.

The following statement of the case was originally prepared by Mr. Justice COLE as a part of his opinion:

" On the trial of this cause, questions of law arose, which, in the opinion of the circuit judge, were so important and doubtful as to require the decision of the supreme court upon them; and, the defendant desiring it, those questions have been reported by the judge for the decision of this court.

" This was a criminal information founded upon section 11, ch. 164, R. S., which reads as follows: ' Every person who shall administer to any woman pregnant with child, any medicine, drug or substance whatever, or shall use or employ any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of said mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter in the second degree.' The information in this case charges in substance, that the defendant did, on the 8th day of January, 1876, at etc., in and upon one Jenny Everson then and there being — the said Jenny Everson being pregnant with child, — feloniously and willfully make an assault, and that the defendant did then and there feloniously and willfully employ upon the body and womb of said Jenny a certain sharp instrument, to the informant unknown, with intent thereby then and there feloniously and willfully to destroy said child, the same not being necessary, etc., and not being advised, etc.; by means whereof the death of the said Jenny was thereby, to wit, on the 16th day of January, 1876, at etc., produced, whereby the defendant did, on the said 16th day of January, at etc., feloniously kill and slay the said Jenny Everson against the peace and dignity of the state.

" The circuit judge reports that on the trial it appeared by the uncontradicted testimony, that the defendant had been in

the practice of treating diseases for several years prior to the
commission of the offense for which she was tried; that dur-
ing this time she was a resident of the village of Monroe, and
was familiarly known as Mrs. Ferguson, and was so called,
though her real name is *Dickinson;* that deceased, at the
time of her death and for a year and more next prior thereto,
resided in the Gleissner House, a public hotel in the village,
as a servant; that the residence of the defendant was about
one-half mile south therefrom; that while deceased was so
living at the Gleissner House, one Mary Erickson was also a
servant in the same house, residing therein; was an intimate
friend of deceased, and shared the same room and bed, they
being of about the same age; that Mary was with deceased at
the Gleissner House on the 8th day of January, 1876, until
about 3 o'clock P. M., when she went away from the house
leaving deceased in her room therein.   The prosecution sought
to prove that on the 8th day of January, being Saturday, the
deceased, in the afternoon, went from the Gleissner House to
the house of the defendant for the purpose of having an ope-
ration for abortion performed upon her, and, among other
witnesses, called Mary Erickson, who testified to loaning de-
ceased $10 that day, and as to conversations had with deceased
when she loaned the money; stated what the deceased said
she was going to do with it, and where she was going that after-
noon, and for what purpose.   The witness was also permitted
to testify as to conversations had with the deceased on the
previous Wednesday and Friday, either before or after the
deceased had been out and had returned to the hotel.   In these
conversations the deceased stated that she understood or had
found out that she was in a family way; that she had been to
see the defendant about it; had been or was going to defend-
ant to get medicine and syringe; that she had made an ar-
rangement or bargain with defendant to have an operation
performed upon her; was to give $25, and was to return to
defendant's on Saturday afternoon for the purpose of having

instruments used to get rid of the child. This is the substance of the testimony of this witness as to the declarations or statements of the deceased. The testimony was objected to on the part of the defendant as incompetent and inadmissible for any purpose. The prosecution, however, claimed that it was competent to show that the deceased had at that time the intention of having an abortion produced, and that this evidence was introduced for that purpose. In his charge the learned circuit judge so restricted the effect of the testimony, and directed the jury that all the declarations of the deceased made before she was informed she could not live, in which the defendant's name was connected, could only be considered as evidence tending to show that at that time the deceased h ad formed the purpose to go to the defendant to have an abortion produced upon her, but was not evidence that the defendant actually produced the abortion or had engaged to do it.

" The questions submitted by the circuit judge are the following:

"'1. Did the circuit court err in admitting the testimony of the witness Mary Erickson in respect to the statements sworn to have been made to her by the deceased, Jenny Everson, as set forth in the report, as the scope and effect of the same were restricted in the instructions given to the jury?

"'2. Did the circuit court err in admitting in evidence the instrument containing the dying declarations of the deceased, Jenny Everson?'"

The cause was argued for the defendant by *B. Dunwiddie,* her attorney, and *S. U. Pinney,* of counsel; and for the state by the *Attorney General.*

For the defense it was contended, 1. That the dying declarations of the deceased were not admissible in evidence. The rule is, that such evidence is admissible only " when the death of the deceased is the subject of the charge, and the circumstances of the death the subject of the dying declarations." *The King v. Mead,* 2 Barn. & Cress., 605 and note; *State v.*

*Cameron*, 2 Pin., 495; *Miller v. The State*, 25 Wis., 388; *Regina v. Hind*, 8 Cox, 300. In the last case cited, it is said that "the reception of this kind of evidence is clearly an anomalous exception in the law of England, which ought not to be extended." See also 11 Cl. & Fin., 108, 112. This kind of evidence is not regarded with favor; and no case like the present can be found where it has been adjudged admissible. The remarks of REDFIELD, J., in *State v. Howard*, 32 Vt., 380, are mere *dicta*. Physical or mental weakness consequent upon the approach of death, a desire of self-vindication, or a disposition to impute the responsibility for a wrong to another, as well as the fact that the declarations are made in the absence of the accused, and often in response to leading questions and direct suggestions, and with no opportunity for cross-examination: all these considerations conspire to render such declarations a dangerous kind of evidence. The rule of evidence is of common-law origin, and applied and still applies only to cases of *felonious homicide at common law*. The procuring or attempting to procure a miscarriage or abortion was not an offense at common law, if the pregnant woman was not *quick* with child, and consented to the act. *State v. Cooper*, 2 Zab., 52; *Smith v. The State*, 33 Me., 48; *Comm. v. Parker*, 9 Met., 263; 8 Mass., 388. The statute under which this information was brought, is not in affirmance of the common law; for, under it, it is not material whether the pregnant woman was quick with child. Our statutes declare certain acts or omissions resulting in death, felonious homicide, which were not such at common law (R. S., ch. 164, secs. 16–19); and the offense here in question is one of these statutory homicides. But the mere characterization of the offense as manslaughter by the statute does not bring the case within the rule admitting dying declarations, just as the statute defining the term "felony" when used in any statute, does not render applicable to every act falling within such definition those common-law rules which were applicable

only to felonies. *Wilson v. The State*, 1 Wis., 184. In criminal matters nothing is to be taken by intendment, but the utmost strictness of construction prevails in favor of liberty and life. It is true that the mere use of the instrument on a pregnant woman, with the intent charged, was a misdemeanor, under sec. 58, ch. 169, R. S.; and that the killing of the deceased by such act, without a design to effect death, while engaged in perpetrating such misdemeanor, would be murder at the common law, mitigated by sec. 8, ch. 164, to manslaughter in the first degree; but this information is not brought under that section. The New York statutes on the subjects of murder and manslaughter and criminal abortion are in the main like ours (see Laws of N. Y., 1872, ch. 181, secs. 1 and 3); and in the case of an indictment for advising and procuring a pregnant woman to submit to the use of an instrument with intent to cause a miscarriage, resulting in the death of the mother and child, the dying declarations of the mother were excluded. *People v. Davis*, 56 N. Y., 103. That case seems decisive of this. The offense there charged was under sec. 1, ch. 181 of the laws of New York of 1872, which expressly declares it to be a *felony;* hence the killing of the deceased by procuring her to resort to means criminal under sec. 3 of that act, would be a felonious killing, and would be murder at the common law, or manslaughter under a statute like ours. In that case the death of the deceased, and the circumstances of it, were the subject of the charge in the same sense as in the case at bar. In both, the substantive act was a misdemeanor, and in both, the death of the mother was a consequence, and this merely increased the punishment; and in neither case was the death of the mother essential to the offense, that of the child being sufficient. The essential elements of the offense being the same under the two statutes, it can make no possible difference that our statute characterizes the offense as manslaughter, while the New York statute does not. The argument drawn from

supposed necessity cannot be allowed to prevail, although that was the foundation of the rule. While valid to the extent of the rule at common law, this argument will not suffice to extend it. *Rex v. Mead, Regina v. Hind,* and *People v. Davis, supra.* 2. That the declarations of Jenny Everson to Mary Erickson were improperly admitted in evidence. Such declarations are not admissible for any purpose unless the principal act which they accompany, and to which they relate, was itself *material to the issue,* nor unless made at the time when the principal act was done, nor unless they were of a character to explain its true nature. *Enos v. Tuttle,* 3 Conn., 250; *Noyes v. Ward,* 19 id., 269; *Corinth v. Lincoln,* 34 Me., 312; *Moore v. Meacham,* 10 N. Y., 210. Whether Jenny was or was not a consenting party to the alleged attempt at abortion, or " had formed the purpose to go to the defendant to have an abortion performed upon her," was not material to the issue. *Smith v. The State,* 33 Me., 48; 7 Ad. & El., 361. These declarations were not made at the time of, or as a part of, any principal act material to the issue. *Frink v. Coe,* 4 G. Greene, 556; *Bacon v. Charlton,* 7 Cush., 586; *Lund v. Tyngsborough,* 9 id., 41; *Chapin v. Marlborough,* 9 Gray, 244; 1 Tayl. Ev., §§ 523-4. Some of these statements, relating to what *had* occurred at defendant's house between the deceased and defendant, being a mere narration of *past* occurrances, were clearly inadmissible (1 Tayl. Ev., § 526; *Nutting v. Page,* 4 Gray, 584; *People v. Davis,* 56 N. Y., 101, 102); yet they were calculated to impress a jury strongly against defendant, notwithstanding the charge of the judge attempting to restrict the use of the evidence; and this is sufficient ground for a new trial. *Lain v. Shepardson,* 23 Wis., 224; *Posey v. Rice,* 29 id., 93.

For the state it was contended, 1. That the dying declarations of the person whose death is alleged to have been caused by defendant, were properly admitted. The offense defined in the statute under which defendant was convicted, consists

in the killing of a human being. By Tay. Stats., 1889, § 57, the using of an instrument with intent to produce miscarriage is a misdemeanor; the death of any person being no part of the offense. Dying declarations are admitted mainly on the ground of necessity (1 Greenl. Ev., Redf. Ed., note 2 to § 156), and partly on the ground that the certainty and near approach of death create an obligation equal to that imposed by an oath in a court of justice. 1 Greenl. Ev.; § 156 and note. These reasons apply quite as strongly to this case as to other cases of homicide. The rule is, that such declarations are admissible in cases of homicide, " where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations." The present case is strictly within the rule. See *Rex v. Baker*, 2 Moody & Rob., 53; *State v. Terrell*, 12 Rich., 329. In the English cases cited for the defense, the death of the mother was not made by the statute an ingredient of the crime, and the crime itself was only declared a felony and not manslaughter. See the statutes in Storer & Heard on Crim. Abort., 165 et seq. In *People v. Davis*, 56 N. Y., 95, the decision is put expressly upon the ground that the offense charged was not homicide in any degree. The principle upon which the rule of evidence rests, applies to all cases of homicide, whether at common law or by statute. But the administering of drugs or use of instruments to produce abortion was always murder at common law, when the death of the mother followed. Storer & Heard, 159 et seq.

Cole, J. The first inquiry is, whether the declarations of deceased to Mary Erickson were admissible for the purpose of showing her intention, and as their scope and effect were restricted by the court. We are of opinion *that they were. They constituted a part of the *res gestæ*, were contemporaneous with the main fact under consideration, and were so connected with it as to illustrate its character. 1 Greenl. Ev.,

§ 108.   It was certainly competent to prove that the deceased went to the house of the defendant at the time it was charged in the information the abortion was produced.   Upon the authorities, her intent or purpose in going there might be shown by her declarations then made or previously made; because such declarations became a part of the *res gestæ*.   For it is evident the declarations were connected with the act of her going to the defendant; were expressive of the character, motive or object of her conduct; and they are to be regarded " as verbal acts indicating a present purpose or intention, and therefore are admitted in proof like any other material facts." 1 Greenl. Ev., *supra; Insurance Co. v. Mosley*, 8 Wall., 397; *Enos v. Tuttle*, 3 Conn., 247; *Inhabitants of Corinth v. Inhabitants of Lincoln*, 34 Me., 310; *Lund and wife v. Inhabitants of Tyngsborough*, 9 Cush., 36; *Nutting v. Page*, 4 Gray, 581; *State v. Howard*, 32 Vt., 380; *Moore v. Meacham*, 10 N. Y., 207; *People v. Davis*, 56 id., 96.   It is obvious that the mere act of the deceased going to defendant's house was equivocal; it might be innocent or not; it might warrant the inference that she went for proper treatment of some ailment; the declarations would render her motive clear and intelligible.   They therefore seem to us as falling under the denomination of the *res gestæ*, and were admissible as original evidence as distinguished from hearsay.

In *State v. Howard, supra*, the declarations of the deceased, Olive Ashe, as to the purpose of the journey in going to the defendant's, were held by the court to be admissible as part of the *res gestæ*.   Upon this question, REDFIELD, C. J., observes, that " the mere act of going was equivocal; it might have been for professional advice and assistance.   The declarations were of the same force as the act of going, and were admissible as part of the act."   In *People v. Davis*, when the deceased came home, in answer to inquiries from her stepmother, she made statements telling what had been done to her by Dr. Crandall at his office, and how he did it, exhibiting

certain medicine which she said the doctor gave her, and
stated what he told her as to taking it when her pains came
on. The court held these declarations incompetent because
they were merely narratives of past occurrences, did not be-
come a part of the thing done at the doctor's office, and were
therefore no part of the *res gestæ*. But the court say: "Had
it been shown that the medicine was to be taken to aid in
producing the miscarriage, what was said in respect to it
would have been admissible." p. 103. The conclusion which
we have reached in view of all the cases upon the subject is,
that the declarations of the deceased made to the witness
Mary Erickson were so connected with her act of going to
the defendant's as to constitute a part of that act, and were
admissible as explanatory of that act. See *Regina v. Ed-
wards*, 12 Cox Cr. Law Cas., 230.

The second question relates to the admissibility of the in-
strument containing the dying declarations of the deceased.
It is insisted on the part of the defendant that these declarations
were not competent evidence against the accused. The question
has in effect been decided adversely to this view by this court.
In *Miller v. The State*, 25 Wis., 384, and *The State v. Martin*,
30 id., 216, it was held that dying declarations were compe-
tent evidence, notwithstanding the clause in the bill of rights
which secures to the accused in criminal prosecutions the
right " to meet the witnesses face to face." It was said that
this provision did not exclude such declarations, because when
the constitution was adopted it was well settled that they were
admissible in cases of homicide, " where the death of the de-
ceased is the subject of the charge, and the circumstances of
the death are the subject of the dying declarations." It is
true that both those cases were indictments for murder; but
the reason and principle of the decisions are strictly applicable
to the case at bar. For this is an information for homicide, for
manslaughter in the second degree; and it is very apparent
that the death of Jenny Everson is the subject of the charge,

and the circumstances of her death are the subject of the dying declarations. The declarations come, therefore, directly within the rule of the adjudged cases.

But it is said that the procuring or attempting to procure a miscarriage or abortion was not an offense at common law, if the pregnant woman was not *quick* with child and consented to the act. There are most respectable authorities in support of that view. (See *Commonwealth v. Bangs*, 9 Mass., 387; *Smith v. The State*, 33 Me., 48; *Commonwealth v. Parker*, 9 Met., 263; *State v. Cooper*, 2 Zab., 52; *contra, Mills v. The Commonwealth*, 1 Harris, Pa., 631, 634.) Our statute makes such an act a criminal offense. Sec. 58, ch. 169, R. S. It will also be remarked that under sec. 11, ch. 164, it is not material whether the pregnant woman be *quick* with child or not. The statutory offense there described consists in administering to a woman pregnant with a child any drug, or in using any instrumental or other means with intent thereby to destroy the child, unless, etc., when the death of such child or of such mother is thereby produced. "The use of violence upon a woman," says Shaw, C. J., in *Commonwealth v. Parker, supra*, "with an intent to procure her miscarriage, without her consent, is an assault highly aggravated by such wicked purpose, and would be indictable at common law. So where, upon a similar attempt by drugs or instruments, the death of the mother ensues, the party making such an attempt, with or without the consent of the woman, is guilty of the murder of the mother, on the ground that it is an act done without lawful purpose, dangerous to life, and that the consent of the woman cannot take away the imputation of malice, any more than in case of a duel, where in like manner there is the consent of the parties." p. 265. Lord Hale, in his Pleas of the Crown, says: "If a woman be with child, and any person gives her a potion to destroy the child within her, and she takes it and it works so strongly that it kills her, this is murder; for it was not given to cure her of a disease, but un-

lawfully to destroy her child within her, and therefore he that gives a potion to this end must take the hazard, and if it kill the mother it is murder, and so ruled before me at the assizes at Bury in the year 1670." 1 Hale, 430. East, treating of the law of homicide with malice aforethought, observes: " Hither also may be referred the case of one who gave medicine to a woman, and that of another who put skewers in her womb, with a view in each case to procure an abortion; whereby the women were killed. Such acts are clearly murder; though the original intent, had it succeeded, would not have been so, but only a great misdemeanor; for the acts were in their nature malicious and deliberate, and necessarily attended with great danger to the person on whom they were practiced." 1 East's Pleas of the Crown, 230; Russell on Crimes, 540; *Smith v. The State, supra.* These authorities show that the offense described in section 11, where the death of the mother ensued from the unlawful act, was murder at common law; and that the statute really reduced the grade of the offense to manslaughter in the second degree. And it is entirely clear that the dying declarations would have been competent evidence at common law, where the death of the deceased, as in this case, was the subject of the charge and judicial inquiry, and the declarations relate to the circumstances of the death. Upon that point it seems to us there is no room for doubt. The fact that the offense with which the defendant is charged has been mitigated, does not change the rule of evidence. The offense is still homicide, though not murder.

In *State v. Howard* there is an express intimation that the dying declarations of Olive Ashe were admissible under the count for manslaughter; but as the defendant was acquitted on that count, the exclusion of such declarations was decided to be an immaterial question. In *People v. Davis*, the defendant was charged under sec. 1, ch. 181, Laws of 1872, with advising and procuring one Clara Perry to submit to the use of an instrument by Dr. Crandall with intent to produce a

miscarriage of the said Clara, and the indictment charged that the death of the said Clara and of her child was produced by the use of the instrument. But this was felony by the statute, and not manslaughter. The supreme court decided that the dying declarations were admissible in that case (2 T. & Cook, 212); but this was overruled by the court of appeals. The court of appeals say that the charge against the prisoner was not homicide in any degree, and upon that ground the declarations were excluded. The admission of the declarations in that case would seem to have been extending the rule of evidence. The same is true of *The King v. Mead*, 2 Barn. & Cress., 605; *Regina v. Hind*, 8 Cox Cr. Law Cas., 300; and *Rex v. Hutchinson*, referred to in note (a) to case of *King v. Mead*. In all these cases, while the declarations related to the cause of the death, yet the death of such party was not the subject of inquiry. These and other cases are referred to in note 2, § 156, 1 Greenl. Ev., May's ed., and the grounds upon which the declarations are received as testimony are discussed. (See the cases of *The State v. Terrell*, 12 Rich., 321; and *Rex v. Baker*, 2 Moody & Rob., 53.) There is no doubt that the declarations were made by Jenny Everson *in extremis*, with a full apprehension at the time of the danger she was in and of death; and we therefore think they were properly received in evidence.

This disposes of the questions submitted for our decision.

The cause must be certified back to the circuit court of Green county with this our decision.

*By the Court.* — It is so ordered.