## STATE v. GARRINGTON.

1. Comp Laws, § 6449, provides that persons convicted of murder shall suffer death or imprisonment for life, at the discretion of the jury. Section 7359 provides that, if the punishment be death, a challenge for implied bias may be made to jurors who entertain conscientious opinions against capital punishment. At the time of the enactment of section 7359 the death penalty was the only punishment for murder. *Held,* that while a juror may no longer be challenged for holding opinions against capital punishment, yet he may be aked as to the holding of such opinions as a basis for a peremptory challenge.

2. Deceased was seen with a small tobacco sack, containing money, some weeks before his death. After the discovery of the crime a similar sack was found in a building occupied by defendant, where deceased was killed. *Held*, that it was not error to receive the sack in evidence, where the building was carefully guarded after the discovery of the crime, as the question of the identity of the sack was for the jury.

3. Where the crime was discovered about 1 o'clock in the morning, it was proper to show that deceased, at about 5 o'clock on the preceding afternoon, in a store two blocks from the scene of the crime, stated that he was going to defendant's place, where his body was afterwards found, and was afterwards seen going in that direction.

4. The act of defendant in exhibiting money between the time deceased was last seen alive and the discovery of his body at the house of defendant may be shown by the state.

5 A test tube, containing pieces of cloth cut from the pocket of overalls worn by deceased at the time of his death, was examined by an expert, who testified that they contained blood stains, but was unable to say that it was human blood. The pieces were cut several weeks after the commission of the crime. The purpose of the evidence was to show that the person who did the killing had rifled deceased pockets with bloody hands. *Held*, that there was such uncertainty as to what caused the stains as to deprive them of any evidentiary value.

6. A state's attorney, in his address to the jury, may not state what writers on criminology tell as to the effect of the repeal of statutes inflicting capital punishment on the increase of crime, where there is nothing but the attorney's assertion as to what these writers say, and nothing to show that their opinions are well founded.

7. The state's attorney in his address to the jury, said: "It is not against the defendant that he did not go on the stand, because he was not compelled to." On an exception being taken, the court said: "You must not go into that. I cannot allow you to make any comment whatever upon that subject." The court did not allude to the matter in his instructions. *Held*, that the error was not cured by the court's remark.

(Opinion filed August 31, 1898.)

Error to circuit court, Minnehaha county. Hon. Jos-
EPH W. JONES, Judge.

James A. Garrington was convicted* of murder in the first
degree, and he brings error. Reversed.

The facts are stated in the opinion.

*D. R. Bailey,* for plaintiff in error.

It was error for the court to allow the state upon the *voir
dire.* of the jurors to enquire if they were conscientiously op-
posed to capital punishment, and again if they were so oppos-
ed where the evidence relied upon for a conviction was circum-
stantial. § 7, Art. 6, Const. S. D.; 1 Green. Ev. § 13; People v.
Ah Chung, 54 Col. 398; Manning v. Ins. Co., 100 U. S. 693.

It was prejudicial error to admit the tobacco sack in evi-
dence, also to permit the witness Saunders to testify that on
the evening of the murder the defendant made a small pur-
chase of him and got a five dollar bill changed in the transac-
tion. No foundation was laid for the testimony and no con-
nection was shown.

It was error to allow the introduction in evidence of the
test tube and its contents. There was nothing to show what
the stains were or how they had been made. By offering this
evidence the state vouched for it and cannot now be heard to
say that the error was not prejudicial. Bram v. United States,
168 U. S. 532.

It was error to allow the witness Kull to testify that on
the afternoon of the day of the murder that the deceased stated
to him that he was going to the place kept by defendant. This
evidence was not a part of the *res jestœ* which was the theory
upon which the court admitted it, was not a part of the trans-
action in question or in any way connected with it,

One of the counsel for the state in his address to the jury stated "It is not against the defendant he did not go on the stand because he was not compelled to." This entitled the defendant to a new trial. § 7381 Comp. Laws; People v. Tyler, 36 Cal. 527; Com. v. Scott, 123 Mass. 239; Long v. State, 56 Ind. 12; State v. Ryan, 70 Ia. 154.

The states attorney in his address to the jury stated, "Writers on criminology tell us that in several of the states where the death penalty has been abolished, it has been reenacted, because, in the judgment of the people of those states the increase of homicide has been such as to make it necessary for the protection of the people." No evidence was introduced on this point and nowhere in the record was this fact shown. This entitled defendant to a new trial. Brown v. Swineford, 44 Wis. 282; Ferguson v. State, 49 Ind. 17; Hall v. United States, 150 U. S. 76; Martin v. Orndorff, 22 Ia. 505; Tucker v. Hemiker, 41 N. H. 317; 4 Am. and Eng. Enc of Law 876.

The court erred in not instructing the jury that the failure of the defendant to testify in his own behalf created no presumption against him. §§ 7370, 7381, Comp. Laws; State v. Tyler, 36 Ia. 522.

*C. P. Bates*, (state's attorney), and *P. J. Rogde*, for defendant in error.

The court properly permitted the state to ask the jurors on preliminary examinations as to whether they had conscientious scruples against capital punishment in cases where the evidence relied upon was circumstantial. 1 Bish. Crim. Proc. § 918; 1 Thomp. Trials, § 74; Gates v. People, 14 Ill. 433; People v. Ah Chung, 54 Cal. 398; Jones v. State, 57 Miss. 885; State v. Bunger, 11 La. Ann. 607; Coleman v. State, 59 Miss. 484; Shafer v.

State, 7 Tex. App. 239; State v. Pritchard, 16 Nev. 101; State v. West, 69 Mo. 401; State v. Leabo, 89 Mo. 247.

The testimony of Kull that the deceased stated to him on the afternoon of the murder that he was going to Garrington's place was properly admissible as part of the *res gestæ*. Green. Ev. § 108; Whart. Crim. Ev. § 262; Hunter v. State, 40 N. J. Law, 495; State v. Dickenson, 41 Wis. 299; State v. Hayward, 65 N. W. 63; State v. Howard, 32 Vt. 380; Travelers Ins. Co. v. Mosley, 8 Wallace, 397.

The statement made by counsel for the state in addressing the jury that "It is not agaisnt the defendant that he did not go on the stand because he was not compelled to," does not entitle defendant to a new trial. State v. Moseley, 31 Kan. 355; Calkins v. State, 18 O. St. 366; State v. Preston, 77 Mo. 294. The court promptly stopped counsel and he ceased making any further remarks of this character. Norton v. State, 6 N. E. Rep. 126; People v. Yute, 60 Cal. 95; State v. DeGonia, 69 Mo. 485; State v. Rivers, 90 N. C. 738; People v. Barnhart, 59 Cal. 402.

The remarks of the state's attorney in addressing the jury as to what writers on criminology tell as to the statutes inflicting capital punishment on the increase of crime do not entitle defendant to a new trial. Hoyt v. State. 109 Ind. 589; State v. Mallon, 75 Mo. 358.

Defendant having failed to request the court to instruct the jury that the failure of defendant to testify in his own behalf created no presumption against him cannot now complain that this instruction was not given. Thomp. Trials, § 2341; Powers v. State, 87 Ind. 153; Elliott App, Proc, §§ 735, 736; Hayne New Trial & App. § 180; Rauch v. State, 110 Ind. 334; Adams

v. State, 65 Ind. 570; People v. Haun, 44 Cal. 96; People v. Ah
Wee, 49 Cal. 236; State v. Bagan, 41 Minn. 285; State v, John-
son, 37 Minn. 497; Silberberg v. Pearson, 75 Tex. 287.

HANEY, J.    Defendant occupied a small frame building,
on Main avenue. in Sioux Falls, consisting of three rooms, all
on the ground floor,    On the morning of December 8, 1897, two
policemen entered the place for the purpose of arresting cer-
tain disorderly persons, supposed to be harbored therein, when
they discovered the dead body of Alfred Erikson lying on the
floor of one of the rear rooms, attended by unmistakable evidence
that he had been killed in the building.    Defendant, who was
in the front room when this discovery was made, was immedi-
ately taken into custody, and in due time was tried, and con-
victed of the crime of murder; the jury designating in their
verdict that he should suffer death.

In impanelling the jury, the state's attorney, against de-
fendant's objections, was permitted to inquire of each venire
man whether he entertained any conscientious scruples against
inflicting the death penalty in cases where the prosecution re-
lies for conviction upon circumstantial evidence, but the court
declined to regard an answer to such inquiry as cause for chal-
lenge.    Our statutes (Comp. Laws), contain the following:

"Sec. 6449.    Every person convicted of murder shall suffer
death, or imprisonment at hard labor in the territorial peni-
tentiary for life, at the discretion of the jury.    Upon trial of an
indictment for murder, the jury, if they find the defendant
guilty, must designate in their verdict whether he shall be pun-
ished by death or imprisonment for life at hard labor, and the
judgment of the court shall be in accordance therewith.    But
upon a plea of guilty the court shall determine the same."

"Sec. 7359.  A challenge for implied bias may be taken for all or any of the following causes, and for no other:  *  *  (8) If the offense charged be  punishable  with  death, the enter taining of  such  conscientious  opinions as  would preclude his finding of the defendant guilty, in which case he  shall neither be permitted nor compelled to serve as a juror."

  When section 7359 was adopted as section 332 of  the Code of Criminal Procedure of 1877, section  6449  contained only these words:  "Every person convicted of murder  shall suffer death for the same."  Pen. Code 1877, § 249.  Then a verdict of guilty necessarily involved  the  death  of the accused, and conscientious scruples against  capital punishment precluded a juror from finding a defendant guilty: but as the law now stands the entertaining of such opinions does not have that affect, and is not . cause  for  challenge.  This is    true  whether  the evidence relied upon for conviction  be  circumstantial or di rect.  The general rule governing  the examination  of persons called  as  jurors is thus  stated by Mr. Thompson:  "Within reasonable limits, each party has a right to put pertinent ques tions to show, not only that there exist  proper  grounds for a challenge for  cause, but to elicit facts to  enable him to decide whether or not he will exercise his  right  of  peremptory chal lenge.".  1 Thomp. trials § 101.   This is a fair expression of the practice which  has  long  prevailed  in this jurisdiction in both civil and criminal trials,  and we can   discover  no valid reason why either party in a  murder  trial should not be per mitted to ascertain  the  opinions of  jurors concerning capital punishment merely for the purpose of determining upon whom to exercise peremptory challenges.   Such,  in  effect, was the course pursued by the court below,  and it  meets with the ap proval of this court.

The prosecution introduced testimony, against the objection of defendant, showing that on the day following the commission of the crime a small tobacco sack was found lying upon a work bench in the front room of the building, occupied by defendant, and wherein the body of deceased was discovered. Testimony was also introduced, against defendant's objections, showing that some weeks before, at Gary, S. D., deceased had a similar tobacco sack, in which he kept small quantities of money. The sack found in the building was received in evidence against defendant's objection, and he assigns the ruling upon the introduction of all this evidence as error. From the discovery of the crime until the discovery of the tobacco sack several persons visited the premises previously occupied by defendant, and it is possible one of these persons might have placed the sack where it was found; but such inference is neither fair nor reasonable, in view of all the evidence, as the premises were guarded with as great care as is usual under like circumstances. The identity of the sack found in the building with the one seen in deceased's possession at Gary was a question for the jury, and it was certainly proper to show the condition and contents of the building wherein the crime was committed. This evidence was properly received.

The crime was discovered between 12 and 1 o'clock in the morning. At 4:45 of the preceding afternoon deceased was at a store within two blocks of where the crime was committed, and was seen to cross the street, going in the direction of defendant's place. A witness for the government was allowed, against defendant's objection, to testify that deceased told him, immediately before leaving this store, that he was going to Garrington's. This ruling is supported by high authority,

and meets with the approval of this court. 1 Greenl. Ev. § 108; Hunter v. State, 40 N. J. Law, 495; State v. Dickinson, 41 Wis. 299; State v. Howard, 32 Vt. 380; State v. Hayward (Minn.) 65 N. W. 63.

· Harry Saunders, a witness on the part of the government, was allowed to testify that defendant called at a store where he was clerking, between 5 and 6 o'clock in the afternoon preceding the discovery of the body, and purchased certain articles, for which he gave a $5 bill, and received $4.80 in change. The objections to this evidence were not well taken. The acts of defendant thus disclosed occured during the eight hours intervening between the time Erikson was last seen alive and when his dead body was discovered. It was certainly competent and relevant to show the defendant's whereabouts and conduct at any time during this period, and the relevancy of such evidence is not affected by the fact that the conduct of the accused was in itself apparently harmless, and consistent with innocence.

A test tube, containing pieces of cloth cut from the pocket of overalls worn by deceased at the time of his death, shown to have been examined by an expert, who testified that they contained blood stains, was received against defendant's objections. The expert was unable to say that the stains were caused by human blood, and the pieces were cut from the overalls several weeks after the crime was committed. It was the evident purpose of this evidence to show that the person who did the killing rifled the deceased's pockets with bloody hands. As the cause must be reversed, as will hereafter appear, we are disposed to hold that, if the evidence should be the same upon a second trial as that presented by the record before us,

this testimony should be excluded.   The time when the pieces were taken from the overalls, and the manner in which those articles were handled, create so much uncertainty as to what caused the stains as to deprive them of any probative force whatever.

In his closing argument to the jury, the state's attorney made this remark:   "Writers on criminology tell us that in several of the states where the death penalty has been abolished it has been re enacted, because, in the judgment of the people of those states, the increase of homicide has been such as to make it necssary for the protection of the people."   To this statement an exception was taken and allowed.   It was made in response to arguments by counsel for defendant urging the jury to not inflict the death penalty, one of whom read a portion of the prelude to a sermon by Rev. Frank Crane against the expediency of inflicting capital punishment.   It will be observed that the learned state's attorney stated a fact not in evidence; a fact of which it is doubtful that courts or juries should take judicial notice.   There are at least two serious objections to this statement.   There is nothing but the attorney's assertion as to what writers on criminology have said upon the subject, and nothing to show that their opinions are well founded.   It is unnecessary to decide in this case whether the judgment should be reversed for this reason alone, but we are of the opinion that this statement should not have been made.

P. J. Rogde, Esq. who assisted the state's attorney, made this remark in his address to the jury, to which an exception was duly taken:   "It is not against the defendant that he did not go on the stand, because he was not compelled to," and thereupon the court, in the presence of the jury, observed:

"You must not go into that.   I cannot allow you to  make  any comment whatever upon that subject."   Defendant failed to re-quest any instruction touching this matter, nor  did  the  court allude to it in its charge.   This court was recently called upon to consider the question here presented.   Its  conclusions  are thus stated  by CORSON, P. J., in State v. Williams (S.  D.)  75 N.  W.  815:   By statute (Comp.  Law, § 7381) an accused party on trial shall, at his own request, but not otherwise, be a com-petent  witness; and  his failure to make such request shall not create any presumption against him."   This law, while intend-ed to confer a benefit upon the accused, places him in  a  pecu-liar position.  If he does make the request, and takes the stand, his testimony will be subject to those tests  on  cross-examina-tion that may prove embarrassing, and detract largely from its weight as evidence.   If, on the other hand, his failure to  take the stand  in his own behalf can be ever called to the attention of the  jury, the provision intended for his benefit would prove a trap and a snare.   The theory that a court can  remove from the minds  of a jury the effect of a statement on  the part of the state's attornry referring to the failure of the accused to  testi-fy in  his  own  behalf, by an  instruction, is illusory, and not sustained by common experience.   Jurors, however much they are inclined to do so, would find it difficult to efface from  their minds the impression made by the remarks of counsel, and  re-inforced  by  the instruction of the court, again calling to their minds the same fact, though given for the purpose of  caution-ing them from  being  influenced  by  counsel's  remarks.   The only safe rule, therefore, when counsel for the state has so  far overstepped his duties as to call to the attention of the jury the fact that the accused has not taken the stand, or offered himself

as a witness, is to grant a new trial. In Iowa this is made obligatory upon the court by statute, and the state's attorney is subject to prosecution for a misdemeanor, who in any manner calls such a matter to the attention of the jury· State v. Baldoser, 88 Iowa, 55, 55 N. W. 97. In Minnesota the court, as well as counsel, is prohibited from referring thereto by statute. State v. Pearce, 56 Minn. 226, 57 N. W. 652, 1065. In Long v State, 56 Ind. 182, the supreme court of Indiana granted a new trial when counsel for the state said, on the argument to the jury: ''There were but two parties to this transaction. You have heard the evidence of one of them. We would have been pleased to have heard from the other, to see what light he could have thrown upon this transaction." To the same effect is Hunt v. State, (Tex. App.) 12 S.W. 737. While the language of the statutes of the several states is somewhat different, the principles involved, and the object and purpose of the law, are the same; and, in our view, the only practical way to remedy the misconduct of the state's attorney in this case is to grant a new trial. We use the term ''misconduct'' in its legal sense, as we are satisfied the learned state's attorney intended no wrong, but in his zeal to protect the interests of the state he went beyond his legal duty and legal right. Lindsay v. Pettigrew, 3 S. D. 199, 52 N. W. 873.

While the facts in the present case are not identical with those disclosed by the record in the former case, it clearly falls within the reason of the rule therein announced, and we are not inclined to recede from the position previously taken on this subject. The decision in State v. Williams rests upon the proposition that the fact of a defendant's failure to go upon the stand should not be alluded to either by counsel for the govern-

ment or the court; hence the court was right in refraining from mentioning the matter in its charge.    It is but just to Mr. Rogde to observe that the decision in State v. Williams had not been rendered when the case at bar was tried.    The judgment of the circuit court is reversed, and a new trial ordered.