GRIFFITHS, Respondent, v. ZETLITZ et al, Appellants.

(190 N. W. 317.)

(File No. 5030.    Opinion filed October 27, 1922.)

**Trial—Jury—Attorneys—Argument of Counsel on Matters Not in Evidence Held Error.**

The reading to the jury by plaintiff's counsel of a magazine article on medical ethics written by a person not a party to the suit and remarks regarding medical ethics where there was no evidence on the subject, was error.

Appeal from Circuit Court, Minnehaha County; HON. JOHN T. MEDIN, Judge.

Action by Vallie Griffiths against A. Zetlitz and another. Judgment for plaintiff, and defendants appeal. Reversed, and new trial granted.

*H. E. Judge* and *Boyce, Warren & Fairbank,* all of Sioux Falls, for Appellants.

*Bailey & Voorhees* and *J. H. Kirby,* all of Sioux Falls, for Respondent.

Appellants cited: Lindsay v. Pettigrew (S. D.), 52 N. W. 872; State v. Garrington (S. D.), 76 N. W. 326; Greissing v. Oakland Motor Co. (Mich.), 169 N. W. 842; 4 C. J. 959.

Respondent cited: Thomp. on Trials, Secs. 998, 957; Morehouse v. Heath, 99 Ind. 518; 2 R. C. L. 424.

ANDERSON, J. This action is brought to recover damages for an alleged assault and battery upon the person of the plaintiff, growing out of a surgical operation in which certain of plaintiff's female organs were removed without her consent. It is claimed by plaintiff that the only operation by her authorized was the taking care of lacerations and misplacements growing out of childbirth, and the removal of the right ovary, if found to be necessary. It is further claimed on the part of the plaintiff that, notwithstanding this limitation as to what the operation should comprise, the defendants removed both ovaries, the Fallopian tubes, and the major portion of the uterus. This is denied by defendants who claim that only the major portion of the uterus was removed, and that this was done by the consent of the plaintiff and that the uterus was so badly diseased that it would have been dangerous to the life of plaintiff to leave it in the condition

in which it was found. This raises the only issue of fact in this case.

In the course of the trial the plaintiff called Dr. H. J. Rock of Sioux Falls as a witness in her behalf. He testified as to an examination of plaintiff some time after the operation, and his testimony was to the effect that he gave plaintiff a bimanual examination, and that by such examination he discovered the absence of a portion of the uterus but was unable to find the ovaries. The case was submitted to the jury pursuant to proper instruction, and the jury returned a verdict in favor of plaintiff in the sum of $2,000.

Defendants assign as error (1) Insufficiency of evidence to justify the verdict and judgment of the court. (2) Excessive damages awarded by the jury under the influence of passion and prejudice. (3) Irregularity in the proceedings of the attorney for plaintiff amounting to misconduct and by reason of which defendants were prevented from having a fair trial.

As to the first assignment, we are of the opinion that the same is without merit. On the part of defendants, four medical doctors were called and testified in the capacity of experts. These doctors were by counsel for plaintiff interrogated as to their affiliation with the organization known as the Sioux Valley Medical Association, and of which association three of the four admitted membership. In his closing argument to the jury, counsel for plaintiff said:

"Gentlemen of the jury, I shall adopt the following as a part of my argument in this case and ask you to consider it as such, and I wish to read to you briefly from an article which appears in McClure's Magazine of January, 1914, entitled 'The New Medical Ethics' by Burton J. Hendrick, who declares that medical ethics is really a cloak for a huge conspiracy of silence against the public, and that its object is the protection of the doctor's livelihood and the concealment of his errors."

By Counsel for Defendants: "We object to the reading of the article on the ground that it is no part of the evidence in the case; that the writer of the article was not under oath; that there was no opportunity to examine him; that it is not claimed there is any evidence in the case to support the argument; and that it has no connection with the issues in this case; and that there is

no rule of law allowing an attorney in addressing a jury to read an article written by another or to quote as evidence in the case anything except the evidence that was offered in the trial, or to base his argument upon anything not offered in evidence and is incompetent and not proper argument before the jury, and it is prejudicial to the rights of the defendants and is misconduct of counsel."

By the Court: "Objection sustained.  Exception taken."

Counsel for Plaintiff (continuing his argument to the jury): "I have read several articles upon this subject, and I have a good memory.  In 1803, as I understand the situation in regard to the medical ethics, they adopted a code about 1803, that provides in effect for the protection of——"

"By Defendants' Counsel: "Defendants object to the statement by the attorney of facts which are not in evidence in this case to the jury and it is misconduct on the part of the attorney."

By the Court: "There is no evidence here to show what ethics they adopted."

By Counsel for Plaintiff: "I think I should be allowed to show what the practice of the medical profession is in matters of this kind."

By the Court: "There is no evidence of the fact that such was adopted.  If the doctors had testified to these things it would be a different matter."

By Counsel for Plaintiff: "I will be glad to obey any orders of the court.  There are plenty of things to talk about without going into the details of just how these ethics were brought about, but it is a fact that must be evident to you from the conduct of the witnesses in this case that it is a part of the ethics of the profession to protect one who is in the position of Dr. Zetlitz or Dr. Kellar, regardless of the rights of the patient."

By Counsel for Defendants: "We except to the statement last made and urge that it is misconduct on the part of the attorney for plaintiff making the statement to the jury which is based upon no facts in the case or upon any evidence offered.  It is detrimental to the witnesses who testified and to their character and reputation, to their truth and veracity, and is based upon no evidence in the case or any impeachment of them."

By Counsel for Plaintiff: "In this case the only medical testimony which was submitted by plaintiff was that of Dr. Rock who was, as you must have noticed, a most unwilling witness, brought into this court at the business end of a subpoena, and who testified with utmost unwillingness. On the other hand there were the three experts who testified in every respect to support the contention of the defendants who were not only able witnesses but witnesses of many years' experience in testifying in a good many cases, and kinds of cases, but who were willing and anxious to testify. I mention this simply to show the attitude taken by these doctors in cases of this kind, regardless of the condition of the patient. There was Dr. S., a splendid able man, and Dr. C. and Dr. B., personal friends of mine, gave up their practice, waited there for two days, smiling pleasantly all three of them, and waiting for a chance to get on the witness stand, when all it was necessary to do was to telephone for them when they were wanted."

We are not unmindful that this case with its peculiar setting. was of a sort well calculated to strongly appeal to the sympathies of the jury, irrespective of the conduct of counsel. But, coupled with what counsel read from the magazine and what he stated. based on what he had learned from articles he had read on the subject, we are not persuaded that the action of counsel was other than prejudicial to the rights of the defendants. No rule is better established than that it is error to read statements to the jury made by persons not under oath. To permit such would open the door for the injection into the record of irresponsible statements,. insinuations, and conjectures, rendering life, liberty, and property insecure. This, we think, is especially so when the conduct of counsel is not promptly reprimanded by the trial court, as is the fact in this case, and also as appears in this case that the court in its instructions did not admonish the jury to disregard the matters referred to when considering of their verdict. Hansen v. Boots, 41 S. D. 96, 168 N. W. 798; Egan v. Dotson, 36 S. D. 459, 155 N. W. 783, Ann. Cas. 1917A, 296; Brown v. Swineford, 44 Wis. 282, 28 Am. Rep. 582; State v. Garrington, 11 S. D. 178, 76 N. W. 326; 2 R. C. L., § 25. In Hansen v. Boots, supra, this court said:

"It is * * * alleged by respondent that whether the conduct

* * * was such as to warrant the granting of a new trial was a matter of judicial discretion for the trial court, and that, that court having refused to grant a new trial, this court should not interfere. Of course, this is the general rule; but, where it is apparent that the trial court's discretion has been abused, this court should not hesitate to interfere."

In Brown v. Swineford, supra, the court, in part, said:

"An advocate may make himself the alter ego of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adversary, dehors the very case he has to try. The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof."

In State v. Garrington, supra, this court said:

"A state's attorney, in his address to the jury, may not state what writers on criminology tell as to the effect of the repeal of statutes inflicting capital punishment on the increase of crime, where there is nothing but the [state's] attorney's assertion as to what these writers say, and nothing to show that their opinions are well founded."

For the reasons hereinbefore stated, the order and judgment of the trial court are reversed, and a new trial granted.

Note—Reported in 190 N. W. 317. See American Key-Numbered Digest, Trial, Key-No. 120(2), 38 Cyc. 1479.

On misstatement of facts, or statements of facts not in evidence, by counsel in argument to jury, as ground for reversal, see note L. R. A. 1918D, 4, 2 R. C. L. 416.