**HARRIS et al. v. ALLISON et ux.** (No. 8061.)

Court of Civil Appeals of Texas. San Antonio. Nov. 14, 1928.

Rehearing Denied Dec. 19, 1928.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, for appellants.

Cunningham, Moursund & Johnson, Perry J. Lewis, H. C. Carter, Champe G. Carter, Randolph L. Carter, and Birkhead, Lange & Beckman, all of San Antonio, for appellees.

FLY, C. J. This is a suit for damages alleged to have been caused by the negligence of Durant Motor Company, Red Ball Motor Bus Company, and B. Harris, by which injuries were inflicted upon the person of Tomi C. Allison, wife of N. D. Allison, appellees herein. Each of the defendants, appellants in this court, filed a separate answer. It was alleged by appellees in one count that on or about November 29, 1926, Tomi C. Allison was a passenger in an automobile bus being operated as a common carrier of passengers for hire by B. Harris and the Red Ball Motor Bus Company, and as said bus was passing along Congress avenue in the city of Austin, an automobile owned by the Durant Motor Company violently and negligently collided with the passenger bus in which said Tomi C. Allison was riding, inflicting bodily injuries upon her. In a second count it was alleged that Harris was a driver for the Red Ball Motor Bus Company, and Tomi C. Allison had secured a seat in the bus automobile to be conveyed by the Motor Bus Company, a common carrier of passengers from Austin to San Antonio; that said Harris negligently ran the motor bus at an excessive and illegal rate of speed within the corporate limits of the city of Austin, and caused a collision by such speed, by not sounding the horn and other acts of negligence. Similar acts of negligence were alleged against the Durant Motor Company.

The cause was tried upon special issues submitted to a jury, and on the answers thereto judgment was rendered in favor of appellees as against the Red Ball Motor Bus Company and B. Harris; that appellees recover nothing as against the Durant Motor Company; that nothing be recovered by the Red Ball Motor Bus Company on their cross-actions against the Durant Motor Company; and that the company last named recover nothing on its cross-action against the other defendants. The Red Ball Motor Bus Company recovered against B. Harris. This appeal has been perfected by the Red Ball Motor Bus Company with a supersedeas bond, and B. Harris with a cost bond.

The jury found that B. Harris, before and at the time of the accident, was operating the motor bus at an illegal speed, that is, at a speed exceeding 20 miles an hour, in the city of Austin; that such excessive and illegal speed directly caused or contributed to the accident and the resulting injuries to Tomi C. Allison; that Harris failed to give a signal of his approach in time to prevent the accident, and such failure to give such warning was negligence; and that it directly caused or directly contributed to the accident and injuries to Tomi C. Allison. The jury also found that Harris failed to turn to the right to avoid the accident, and such act was negligence that contributed to the accident and injuries to Mrs. Allison. The jury absolved the Durant Motor Company from negligence.

The testimony of Mrs. Allison shows that

on November 29, 1926, Mrs. Allison, wife of N. D. Allison, took the bus of the Red Ball Motor Bus Company, at its station in Austin, Tex., to be transported to San Antonio. As the bus backed out of the station of the company, it ran into a passing automobile, then, after moving down Congress avenue across the bridge over the river, the bus, which was moving at the rate of 25 or 30 miles an hour, ran into the automobile as the latter was endeavoring to turn to its right to avoid the bus. By this collision Mrs. Allison claimed to have been injured.

The first proposition in the brief of B. Harris is not tenable. If the court admonished counsel not to ask certain questions on any subject, the mere admonition could not possibly have had any effect on the jury, as it was not made in the presence of the jury. The jury had been withdrawn, and after the court heard what counsel for Harris and the Red Ball Motor Bus Company wanted to prove by Rogers, a policeman, the court held the evidence inadmissible and instructed the attorneys for appellants not to ask questions about the objectionable matter before the jury. The court had the authority to prevent counsel from bringing indirectly before the jury conversations held by the court to be inadmissible. Counsel for appellants insisted on being "admonished" as to what he should not ask the witness Rogers, and is not in a favorable position to object to the admonition given by the court. It is revealed by the record that Allison and wife presented no objections to the evidence offered to be introduced by appellants, but the whole affair was one between the Red Ball Motor Bus Company and B. Harris, on the one side, and the Durant Motor Company, on the other. Appellees, Allison and wife, had virtually agreed with the Durant Motor Company before the trial began that no judgment would be sought against that company, and the said company was held in the suit by the motor bus company and Harris, on a cross-action by them against said motor company.

If the evidence was admissible, appellants would have the right to use it, not only as tending to show that they had not been guilty of the negligence charged against them as causing or contributing to the accident, but also as tending to show that it was the negligence of the Durant Motor Company alone which caused the accident. We cannot anticipate and hold that the verdict of the jury would have been the same and would have fixed exclusive liability on appellants. It is true that the jury found not only that appellants were not on the right side of the street and did not give a signal, but also that they were exceeding the speed limit, and that each of these acts of appellants contributed to the injuries; but it might well be that had the jury heard the admissions of the driver of the motor company to Police-

man Rogers, they might have found that appellants were not on the wrong side of the street and that the speed did not contribute to the accident. If the evidence was admissible, it was material and might have exonerated appellants and placed the responsibility on the Durant Motor Company. This being true, the important question arises: Was the testimony admissible in evidence?

We set aside the objection to entertaining the question because the reasons for rejecting the testimony were not set out in the bill of exceptions taken by appellants, for the reason that the bill of exceptions is very long and there are many colloquies between the court and attorneys in which the trial judge gave the grounds on which he rested his conclusion that the testimony was not admissible, and this court is made as fully aware, in that way, of the grounds on which the testimony was rejected, as though they had all been summed up at the end of the bill. The question as to the admissibility of the evidence is duly raised for the consideration of this court, whether appellees objected to its admission or not.

The bill of exceptions shows that appellants offered to prove by G. H. Rogers, who was a member of the Austin city police force, being an "emergency call man, police station," that on November 29, 1926, between 7:30 and 8 o'clock p. m., he received a telephone call from B. Harris asking him to come to the scene of the collision on South Congress street. He at once got in his car and went to the place of the accident as quickly as he could. When he got there, he spoke to M. L. Jacobs, driver of the Durant Motor Company car. He stated that it took him about ten minutes after he received the message to reach the place, and about three minutes after he got there he talked with Jacobs, who was sitting in his car, the front part of which was on the west side of the street car track and the rear part in the middle of the track. Rogers said: "I asked Mr. Jacobs why was the car on the west side of the street car track, and he answered 'I don't know.'" He then said "that he knew he was on the wrong side of the street but that he had—never did see the car until the time of the collision—the car that he collided with." He also said he had been up all the night before. Rogers said Harris walked up while they were talking. Harris knew Rogers was an officer. It was shown that the conversation took place 20 or 25 minutes after the accident. The court held that the conversation was not admissible either as a part of the res gestæ or by way of an admission upon the part of the agent of the Durant Motor Company. Jacobs swore that at the time of the accident he was acting in the course of his employment with the Durant Motor Company, and that shortly after the accident he talked with Officer Rogers. The jury found

that Jacobs was not driving west of the middle of the street. It was a very important issue in the case as to the negligence, and the admissions of Jacobs would have had great influence on the jury. Jacobs was a traveling salesman of the Durant Motor Company for the Southern part of the state of Texas, with headquarters in San Antonio. The admissions made to Rogers sharply contradicted his testimony.

The testimony of the policeman showed that the declarations of Jacobs were deliberately and voluntarily made, while his mind was calm and unruffled by any excitement, and the statements were borne out by the location of his automobile. If his automobile had been hit, as Mrs. Allison swore, at its rear as it was turning to its right in front of the bus, it would not have been in the position it was found by the policeman. However that might be, the statements of Jacobs were res gestæ. They occurred in less than 30 minutes after the accident and were voluntarily made in the first statements made by Jacobs and before he had left his car. There could have been no design at the time, but it seems to have been a voluntary declaration as to the facts. It certainly was not self-serving, but it was inculpatory, and the circumstances would preclude the idea of his making false statements that tended to show his own negligence.

Each case of res gestæ must be tested by its own peculiar facts. and it follows that decisions cannot be made guides except in their expressions of general and fundamental rules governing the doctrine of res gestæ. There are different tests to be applied, one being as expressed by the Texas Court of Appeals in Bradberry v. State, 22 Tex. App. 273, 2 S. W. 592: "Were the * * * facts talking through the party or the" party talking "about the facts?" It must be a matter connected with and arising from the transaction. As clear a definition as has come to our notice is that given by Wharton, in his old and highly valued book on Evidence (section 259), which has been often approved: "The res gestæ may be defined as those circumstances which are the automatic and undesigned incidents of a particular litigated act, and which are admissible when illustrative of such an act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist, as we will see, of any one absorbed in the event, whether participant or bystander They may comprise things left undone as well as things done. * * * In other words they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness, seeking to manufacture evidence for itself." As said in the case of Commonwealth v. Werntz, 161 Pa. 591, 29 A. 272, by the Supreme Court of Pennsylvania: "The res gestæ is different in different cases; and it

is, perhaps, not possible to frame any definition which would embrace all cases which may arise in practice. It is for the judicial mind to determine, upon such principles and tests as are established by the law of evidence, what facts and circumstances in particular cases, come within the import of the term." In this connection it can be stated that there are facts in the case of Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Civ. App.) 280 S. W. 882, which differentiate it from this case, one potent one being that the truck driver had left the place of the collision and had his way blocked by two men for the purpose of detaining him, and asked him a leading question as to the condition of the lights on the truck, and he answered that they were not burning when the collision took place. There was no one else present who saw the collision. The statement did not seem to be a voluntary one, and possibly was inspired by fear. The statement was certainly led up to by the men who blocked the street and detained the driver, and was not calmly and voluntarily made. Jacobs, the agent of the Durant Company, was not an ordinary driver of an automobile for the motor company, but a salesman for a large extent of territory, which was a position of trust and confidence. Jacobs would not have been influenced, by anything that appears in the record, to have assumed the responsibility for the collision. He seemed to be impelled by his own impulses to take his share of the responsibility.

The necessity for the admission of the statement made by Jacobs lies in the superior trustworthiness of the extrajudicial statements, which were against his interest and seemingly unbiased. Wigmore, Ev. § 1748. There was no reason for a fabrication of testimony which could not in any manner benefit the person who gave it. International & G. N. Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; San Antonio & A. P. Railway Co. v. Gray, 95 Tex. 424, 67 S. W. 763. Judge Gaines, in the Anderson Case, gave one of the rules applied as to res gestæ as follows: "Another rule, applied in many of the American courts at least, is to admit as parts of the res gestæ not only such declarations as accompany the transaction, but also such as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design." That decision has been often cited approvingly in and out of the state. Not only do we think the evidence was res gestæ, but it was admissible to assail the testimony of Jacobs, who testified at the trial. The statement made to the policeman was in direct conflict with the testimony of Jacobs on the stand.

The allegation to the effect that the Durant Motor Company had paid Harris for the damage to his car, which he was operating for the Red Ball Motor Bus Company, was pertinent as tending to show an admission upon the part of the Durant Motor Company that it had caused the collision. Galveston, H. & S. A. Railway Co. v. Hartzig, 3 Tex. Civ. App. 296, 22 S. W. 1013; Austin Electric Railway Co. v. Faust, 63 Tex. Civ. App. 91, 133 S. W. 449; San Angelo Water, Light & Power Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1101.

It is argued that if the evidence had been admitted as to what Jacobs said to the policeman, it could not have affected the liability of appellants to Allison and wife, and it is argued that the jury found appellants guilty of' negligence. The relevancy and propriety of the testimony cannot be made dependent on what was afterwards found by the jury, for if the evidence had been admitted there might have been a different verdict by the jury. Harris testified that Jacobs was on the wrong side of the street, which of course was his left side of the street, and if the statement of Jacobs had been admitted it might have caused the jury to have credited the testimony of Harris.

It is unnecessary to consider the other matters sought to be raised in the briefs.

For the errors indicated, the judgment is reversed and the cause remanded.