Louise E. Herrington STRICKLAND et vir,
Appellants,

v.

PIONEER BUS COMPANY, Appellee.

No. 15271.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 4, 1968.

Rehearing Denied April 25, 1968.

C. Wayne Holder, Thomas G. Kenyon, Garvin H. Germany, Jr., Freeport, for appellants.

Butler, Binion, Rice, Cook & Knapp, Tom Alexander, Jonathan Day, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a take nothing judgment rendered against appellants based on a jury verdict convicting Mrs. Strickland of contributory negligence. This is a case in which appellee's bus ran into the rear of the Chevrolet Impala driven by Mrs. Strickland. The jury acquitted the driver of the bus of all acts of negligence charged except one. It found the bus was following Mrs. Strickland's automobile too closely and this was a proximate cause of the collision. It found Mrs. Strickland reduced the speed of her vehicle at such time as a person of ordinary prudence would not have done so and this was a proximate cause of the collision.

While appellants attack each answer of the jury which acquitted appellee's driver of negligence, the controlling issues here,

on the question of appellee's liability, are whether the jury's answers that Mrs. Strickland reduced the speed of her vehicle when an ordinarily prudent person would not have done so and this was a proximate cause of the collision, have any evidence of probative force to support them and, if they do, whether they are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The evidence shows that the collision occurred on Reisner Street near or at its intersection with Washington Avenue. Reisner runs generally in a north-south direction south of its intersection with Washington. It does not continue north of Washington. Washington runs generally in an east-west direction. A signal light controls the intersection. A motor vehicle proceeding north on Reisner would turn either left on one of the three northerly lanes of traffic on Washington after crossing the three south lanes on Washington and proceed west, or it would turn right in one of the three southerly lanes of traffic on Washington and proceed east. Reisner has two lanes of traffic proceeding north and none proceeding south.

The collision occurred about 3 o'clock p. m. on October 13, 1964. The weather was clear and the streets were dry.

Mrs. Strickland testified she was proceeding north on Reisner. She was going to make a left turn on Washington. The signal light was turning to red facing her as she was half a block away. She then started putting her foot on the clutch; turned on her blinker light, and stopped. She was waiting and watching for the light to turn green. The next thing she remembers she was on the floor board of the car. Her car had been struck by something. She never saw what struck her but was told it was a bus. The next thing she remembers there was a policeman telling her he had to move her car. She testified the bus driver came up and

asked her to sign a statement that she was not hurt. He told her, "The damn brakes went out." She testified she was in pain, was crying and was hysterical.

On cross-examination Mrs. Strickland testified she felt sure she had the blinker light on because that was her practice when she was going to make a turn. The traffic light was still red when the bus hit her car. She activated the blinker light after she stopped. She testified that her testimony concerning what she did with regard to her blinker light was based solely on what was her usual practice. When she starts through an intersection after the light turns green, it is her custom to continue on through the intersection. She stated she gave no signal of her intention to either stop or suddenly reduce her speed just prior to the impact.

Mr. John Bales, one of the investigating officers, testified he and his partner received the call about the accident about 3:05 p. m. The police station was two blocks from the scene of the accident. On arrival he found the bus against the back of the automobile. After identifying the drivers of the vehicles, they continued their investigation. He did not take a signed statement from Mr. Stockman, the driver of the bus, but his partner, Mr. Johnson, did. Mr. Stockman made no statement to him at the scene. The signal lights, which we have described, were working properly. On cross-examination, he testified the vehicles were either in contact or in very close proximity. There were no skids marks behind the bus. He estimated the damage to the Chevrolet to be $60.00. The car could be operated but it was moved by a wrecker because Mrs. Strickland had been taken to the hospital and there was no other way to remove it. He identified pictures of the bus in its location after the accident. He also identified a picture of the Chevrolet, but it had been moved onto Washington before the picture was made. The picture showed damage done to the Chevrolet on the left rear light and on the

left rear panel back of the door where, according to the bus driver's testimony, some chrome had been pushed to within from 8 inches to a foot of the door. The pictures of the bus showed bending or denting of the front bumper about at its center and to the right of center.

Mr. Johnson, the other investigating officer, testified that after receiving the call at 3:05 p. m., he and his partner went to the scene, arriving at 3:14 p. m. He obtained the names of the drivers of the vehicles. He couldn't recall whether the vehicles were in contact. He talked briefly to the bus driver and asked for a brief description of what occurred, and then proceeded to take measurements. Within less than five minutes after arrival at the scene he took a signed statement from the bus driver. He was at the scene (the statement was excluded on the objection that it was hearsay). The vehicles left no skid marks. At impact the back end of the Chevrolet was 23 feet from the intersection of Reisner with Washington. The front end would have been about even with the intersection. The Chevrolet was about 20 feet in length. He did not know the length of the bus. He estimated damage to the bus to be $5.00. He tested the brakes on the bus. The guage showed 100 pounds air pressure.

The deposition of Allen Stockman, the bus driver, was offered in evidence. He testified he had been following Mrs. Strickland's car for some time. He was in no hurry. He thought the collision occurred about 3:30 p. m. Most of the time his bus was from 200 to 300 feet behind the Chevrolet, but the gap between them would be less from time to time. As they approached Washington he estimated he was about a bus length behind the Chevrolet. As he approached Washington he noticed the light was green. He was then about 200 feet away and the light was green all the way up to the time of the collision, he was pretty sure. "The light was green when we was just fixing to make the corner." He was looking at the light. For about a block from Washington until the time of the collision he was about a bus length behind. He looked at the light just before he hit her. He did not see her stop. "The reason why, when she first it her brakes, in other words, I was watching her and the light, too, we were fixing to make a left-hand turn and the light was green." She hit her brakes only one time. When she hit her brakes, he hit his. He stopped when he hit or bumped her car. He then looked at Mrs. Strickland and she was sitting under the steering wheel. He passed out some cards to passengers on the bus, and then looked up and could not see Mrs. Strickland sitting up. He got off the bus and went to the car. It was moving "just a little bit" and her foot was on the brake, but it was not holding. Mrs. Strickland was over in the right-hand side of the seat. Her car had been moved four or five feet by the impact. No skid marks were made by the bus. Immediately before the accident he was driving five or six miles an hour. (At this point in the deposition that was introduced, it was stipulated that Stockman was driving appellee's bus and was acting within the course and scope of his employment at the time of the collision.) He was far enough back of the car to stop if his brakes had held real good. They didn't hold real good. "When she hit her brakes I hit mine too hard and too quick." When Mrs. Strickland indicated with her stop lights that she had stopped, he was about 30 feet behind her. He denied that he told Mrs. Strickland that "Those damn brakes didn't hold." Over appellee's objection that the evidence was hearsay, the court permitted the witness' answer to be introduced concerning a statement he made to the police at the scene of the collision, and which he signed. He testified the policeman asked him what happened and he told him. Such statement was like this: *"I was going north on Reisner. I was going 15 to 20 miles per hour; the car in front of me stopped for the red light at Washington; I hit my brakes, but it just wouldn't stop the bus.*

*I guess I was just too close to her."* (emphasis ours unless otherwise indicated) After admitting making this statement, he was asked if his memory was better then than now. He answered, *"Well, it is this way: You see somebody hurt, and you are liable to do anything."* When then asked if he was going 5, 15 or 20 miles an hour, he replied he thought he was going at a low rate of speed. He stated he could have been going 15 or 20 miles per hour back farther "but not down there." He testified then that the light was not red. He denied he told anyone that "the car in front of me stopped for a red light at Washington." He then said, "What I told him down there * * * was it Mrs. Herrington? Anyhow, I was back behind her, and we had started to make a left-hand turn, and the light was green, and we got out there in the street —well she was out to the yellow stripe line, and I told him I thought that I might have—the only reason I could figure why she had stopped was because it turned caution." The witness was then asked if he made the statement, which we have quoted previously, to his company. He answered he made one to the company. He stated that such was the statement, "but it must have got mixed up with the speed I was making further back."

At this point in the trial, appellants' counsel again offered as res gestae the statement given the investigating officer at the scene of the accident. It was written on the back of the card used by the officers to make their report and was signed by Allen Stockman. It was again excluded from evidence, though it appears in the record as part of appellants' bill of exception (Plaintiffs' Exhibit 1). We should note here that up to this point Mrs. Strickland had not testified. The witness also testified Mrs. Strickland told him she was scared but thought she would be all right in a minute. She sat in the police officer's car. When he first went to her car he went to the right side, and one of the officers went to the driver's side. He doesn't remember about the wrecker arriving because he was talking to the officer. The ambulance came for Mrs. Strickland in about ten minutes to take her to the hospital.

The short written statement of Mr. Stockman was excluded on objection that it was hearsay when it was offered the first time when the officer was testifying. The written statement was again excluded on the objection that it was hearsay after the deposition of Mr. Stockman was introduced in evidence. However, the part of the deposition in which he admitted making the statement and the exact verbiage used in it were admitted over the objection that it was hearsay and not proper impeachment. We are unable to find in the record any limitation on the purpose for which the admission made in the deposition might be considered, nor do we find any request for any instruction limiting its consideration. There was no limited offer of such testimony. We, therefore, consider that the fact of his having made the statement and what the statement was is in evidence.

We are of the view that in this posture of the record the jury could, and we can, consider the deposition admission as substantive evidence if the statement is res gestae.

█ We are of the view that the statement made to the officer was res gestae. It was made at the scene within fifteen or twenty minutes after the collision occurred. Too, Mr. Stockman's deposition testimony, that when you see somebody hurt you are liable to do anything, shows that when he made the statement he was acting under the immediate influence of the event concerning which the statement was made. Harris v. Allison, 11 S.W.2d 821 (Tex.Civ.App.), Error dism.; Coleman v. Cook, 195 S.W.2d 1020 (Tex.Civ. App.), n. w. h.; Safeway Convoy Co. v. Potts, 214 S.W.2d 680 (Tex.Civ.App.), n. w. h.; Houston Electric Co. v. Schmidt,

233 S.W. 637 (Tex.Civ.App.), rev. on other grounds 242 S.W. 1019 (Tex.Com.App.).

 In the light of all of the evidence, we are of the view that the jury's answers, finding Mrs. Strickland reduced the speed of her vehicle at a time when a person of ordinary prudence would not have done so and that such was a proximate cause of the collision, are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

In the light of the record before us, we think the short written statement made and signed by Mr. Stockman to the police officer at the scene of the collision is itself admissible in evidence.

 There was no error in refusing to submit the requested issues on discovered peril. This theory of recovery was not raised by the evidence.

Appellants also complain that there is no evidence and, alternatively, insufficient evidence to support the jury's answer that Mrs. Strickland suffered no injury to the physical structure of her body. They also assert that this finding is in conflict with the general damage issue where the jury found she was damaged to the extent of $5,000.00.

 We have read the entire statement of facts of 708 pages, most of which consists of medical testimony. There is evidence of probative force to support the jury's finding that Mrs. Strickland suffered no injury to the physical structure of her body, and we cannot say that such finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. There is a great wealth of evidence that the injury suffered by Mrs. Strickland was mental and emotional. She had unfortunately had severe emotional problems for several years. The jury could have well concluded her injuries were mental and emotional only.

The jury found, in answer to the general damage issue which was worded as is usual in personal injury cases, that Mrs. Strickland was damaged in the amount of $5,000.00. However, the court gave a special charge in connection with the issue expressly authorizing the jury to allow recovery to the extent that previously existing physical, mental and emotional conditions might have been aggravated by the collision. The damages found in answer to this issue could well be attributed to the aggravation of the pre-existing mental and emotional conditions. The answers can be reconciled and are not, therefore, conflicting. Dobbins v. Gardner, 402 S.W.2d 804 (Tex.Civ.App.), ref., n. r. e.

All other points raised have been carefully considered by us, and though not specifically discussed are overruled.

Reversed and remanded.