### W. B. Wallace et al. v. Byers Bros. et al.

Delivered November 14, 1896.

1. **Depositions—Correction of Formal Defects.**
It is not error to permit depositions to be withdrawn for the purpose of having the officers taking them make correction of formal defects in their respective certificates.

2. **Same—Retaking Before Different Officer.**
It was not error to permit depositions taken before an officer not authorized for that purpose to be retaken by a different officer, upon due notice, with such "regulations and safeguards" as indicate that the integrity of the answers was preserved.

3. **Same—Suppression—Others to Same Effect.**
Where two witnesses testified substantially to the same facts, the refusal to suppress their depositions on account of formal defects was harmless error, when a subsequent deposition of one of them to the same effect was admitted.

4. **Same—Same—Facts Otherwise Established.**
The refusal to quash a deposition is not reversible error where the testimony of another witness establishes the same facts.

5. **Trespass to Try Title—Death of Party Plaintiff—Bringing in Heirs.**
In trespass to try title it was not error to refuse a motion for a continuance to make parties the heirs of a deceased plaintiff, where the plaintiffs were all tenants in common, and the judgment provided that the rights of the heirs should not be prejudiced.

**6.  Depositions—Suppression—Oral Testimony of Same Witness.**

The exclusion of a deposition is not error, where the same witness testifies orally to the same facts.

**7.  Evidence in Proof of Negative.**

On an issue as to the existence of a man claimed to have come from Crawford County, Georgia, to Texas, in 1835, evidence of a witness is admissible that he had lived in that county since 1824, and that no one of the given name went from there to Texas in 1835, and that there was never any report or tradition to that effect. The question naturally called for testimony of a negative character.

**8.  Interrogatory—Answer Responsive.**

See the opinion, paragraph 7, for an answer to an interrogatory held to be responsive and not argumentative.

**9.  Evidence—Issue of Fabrication—Influencing Witness.**

On an issue of fabrication as to the existence of a man, evidence tending to connect one of the parties to the fabrication with an attempt to influence a witness is admissible.

**10.  Practice on Appeal—Special Act of Legislature not Contained in Record.**

The appellate court is unable to review the ruling of the trial court on the admission in evidence of a special act of the legislature, when the special act does not appear in the record.

**11.  Secondary Evidence—Letter Establishing Pedigree.**

Secondary evidence of the contents of a letter tending to establish pedigree is admissible, when the recipient testifies to its loss and to a diligent search for it.

**12.  Evidence—Family History—Hearsay.**

On an issue of identity evidence of family repute and family history is admissible, and is not subject to the objection that it is hearsay.

**13.  Same—Identity—Theft Irrelevant.**

Plaintiffs claimed that the W. to whose heirs the land in controversy was patented came from Georgia, while defendants claimed that he came from Virginia. Held, that evidence of theft by the Virginia W. was irrelevant to the issue of identity.

**14.  Same—Agreement to Look Up Testimony.**

Where the evidence raised an issue of fabrication as to the plaintiffs' case, testimony showing an agreement between one of the plaintiffs and one B. and a further agreement between said B. and one H. for a contingent interest in the recovery, in consideration of services in looking up testimony, was admissible.

**15.  Same—Conversation With Another Person.**

It is not reversible error to refuse to permit a witness to state what he told another person, when he is on the stand and makes the same statements directly to the jury.

**16.  Practice in Trial Court—Argument of Counsel—Historical Documents.**

The action of defendants' counsel in his argument to the jury in quoting from official letters and reports by Gen. Houston to Gov. Davis affords no ground of complaint.

**17.  Special Instructions—Refusal Harmless Error.**

It was harmless error to refuse special instructions requested, when the application of the propositions stated therein was contingent upon a particular finding of the jury, and the jury found otherwise.

**18.  Evidence—Declaration of Purpose—Res Gestæ.**

Evidence of a declaration of purpose by one starting from Virginia to Texas is admissible as part of the res gestæ.

APPEAL from Clay.   Tried below before Hon. GEORGE E. MILLER.

*W. S. Simkins, J. A. Templeton* and *A. W. Gregg,* for appellants.—

1.   Where the deposition of a witness has been taken by an officer not

authorized by law to take same or where it has been defectively certified to by the officer taking same, or where it has been returned into court in a manner not in accordance with law, such depositions should on proper motion be quashed; and it is error for the court to permit same to be withdrawn by the parties taking said deposition or by their counsel, and to be by them returned to the officer taking same or to another officer, to be by such officer recertified and again returned, and all depositions so withdrawn should be quashed. Rev. Stats., art. 2229; Laird v. Ivens, 45 Texas, 621; Bush v. Barron, 78 Texas, 8; Railway v. Brousard, 69 Texas, 621; 77 Texas, 484-486; 79 Texas, 579, 580.

2. Where a party plaintiff dies pending suit and prior to judgment, upon suggestion of such death being made the cause should be continued to make the heirs of such decedent parties to the action, and it is error to proceed to judgment without making such heirs parties. Rev. Stats., arts. 1246, 1247; Armstrong v. Nixon, 16 Texas, 611.

3. The court erred in permitting defendants to prove that no tradition existed in Crawford County, Georgia, that a man from that county had fallen with Fannin at Goliad in 1836. Railway v. Burke, 55 Texas, 339; Dwyer v. Insurance Co., 63 Texas, 356; Abbott's Trial Ev., pp. 90, 91, 95; 1 Greenleaf on Evidence, sec. 99; Rankin v. Bell, 85 Texas, 32; Railway v. Rowland, 82 Texas, 172, 173.

4. The court erred in admitting in evidence the testimony of W. A. A. Wallace as to the contents of the letter written by Samuel Wallace to his sister Rebecca. Jones v. Northcutt, 46 Texas, 445; Odom v. Woodward, 74 Texas, 45; Abbott's Trial Ev., pp. 90, 91; 1 Posey's U. C., 325; Rice on Ev., vol. 1, pp. 414 to 420; vol. 2, pp. 1000 to 1015.

5. The manner of death does not come within the term pedigree, and can not be proved by hearsay. Abbott's Trial Ev., pp. 90. 91; 1 Greenleaf on Ev., secs. 103, 104.

6. The argument of counsel should be confined to the facts proven on the trial and to matters within the record, and an argument based upon facts not proven, and a statement of such facts by counsel in the argument to the jury, should not be permitted. Rule 39, District Courts; Taylor v. McNutt, 58 Texas, 74; Railway v. Groswood, 21 S. W. Rep., 561, 562; Railway v. Johnson, 23 S. W. Rep., 826, 827.

7. It is error to permit a witness to testify as to the motive or purpose of another. 3 Willson, C. C., sec. 134.

*Allison Mayfield, Potter & Potter*, and *Davis & Garnett*, for appellees.—1. It was not error for the court to permit the depositions to be withdrawn and returned to the Clerk of the Superior Court of Crawford County, Georgia, before whom they were taken, in order that he might correct informalities and deficiencies in his certificate. Milliken v. Smoot, 71 Texas, 760; 2 Posey's U. C., 292; Boone v. Miller, 73 Texas, 563; Conger v. Cotton, 37 Ark, 286; Bewley v. Ottinger, 1 Heisk. (Tenn.), 354; Oatman v. Andrews, 43 Vt., 466; Jenkins v. Anderson (Pa.), 11 Atl. Rep., 558.

2.  The evidence was admissible on the question of pedigree, and the loss of the letter, or at least the inability of the appellees to produce it, was sufficiently shown.   Byers v. Wallace, 87 Texas, 503; 1 Greenleaf on Evidence, sec. 558.

3.  The statements made by appellees' counsel, of which complaint is made, were in reference to a historical fact known of all men and within the judicial knowledge of the court, but if otherwise, the statement was strictly true, and no one thirsting after justice should complain of it.

TARLTON, CHIEF JUSTICE.—William Wallace was the first sergeant of Capt. P. S. Wyatt's company in the Republic of Texas, and as such he perished at the massacre at Goliad in March, 1836.  A headright certificate for two-thirds of a league of land was issued to his heirs, and to them by virtue of the certificate the land in controversy was patented.

The plaintiffs, appellants here, claim as heirs of William Wallace, asserting that he came from Crawford County, Georgia.  The defendants, appellees here, claim through the heirs of William Wallace, asserting that he came from Rock Bridge County, Virginia.

The verdict of the jury, under the charge of the court, establishes at least one of two conditions:  (1) That the plaintiffs failed to show that they are the heirs of William Wallace who was the first sergeant of Capt. P. S. Wyatt's company and who fell at Goliad; or (2) that William Wallace who thus fell was from Rock Bridge County, Virginia, and that his heirs are represented by the defendants.

As the record discloses evidence sufficient to sustain either of these conclusions, the verdict will require that the judgment be affirmed, unless we find merit in the several assignments of error of which we proceed to dispose in the following:

*Conclusions of law.*—1.  The three assignments of error first urged are overruled.  Complaint is therein made of the action of the court in permitting the defendants to withdraw from among the files the depositions of several witnesses, to the end that formal defects in them might be corrected.  In some instances the depositions had been improperly certified by the respective officers taking them; in others they had been taken in the first place by an officer who was not authorized to take depositions.

With reference to the first, the proper correction or amendment was made by the same officers.  With reference to the last, while a different officer took the depositions on the second occasion, this officer, duly qualified for that purpose, certifies that they are the answers of the witnesses (naming them) to the direct and cross-interrogatories; that the answers were made by the witnesses (naming them) before the officer, and that they were signed and sworn to before him by each of them. The amendment of these depositions was had in each instance upon due

notice and with the permission of the court, and with such "regulations and safeguards" as indicate that the integrity of the answers was preserved; and the exercise of this power will not be regarded as erroneous. Creager v. Douglass, 77 Texas, 486; Price v. Horton, 4 Texas Civ. App., 526.

2.   There was probable error in refusing to suppress the depositions of Mr. and Mrs. Moore.   While the certificate of the officer states that the answers were subscribed and sworn to, it omits the statement that they were subscribed and sworn to by the witnesses, as prescribed by the letter of the statute.   Railway v. Broussard, 69 Texas, 621.

The depositions, however, disclose that the witnesses named testified substantially to the same facts.   It also appears that Mr. Moore's depositions were subsequently taken, and were used without objection.   The testimony thereby disclosed was substantially the same as in the assailed depositions.   It follows that, if the objection here urged had been sustained, and the depositions suppressed, evidence of substantially the same import would have been before the same jury.   Hence the action complained of, if erroneous, must be deemed harmless.

3.   The action of the court in overruling the motion of the plaintiffs to quash the deposition of Thos. A. Wallace, if erroneous, will not require a reversal.   The testimony of a witness, J. E. Allen, was much to the same purport as that contained in the deposition of Thos. A. Wallace; so much so, in fact, that we believe that the jury could not have been differently influenced had the deposition in question been rejected.   Avery v. Avery, 12 Texas, 59.

4.   One W. H. Mask was a party plaintiff in this cause.   He died in 1891, after the institution of this suit September 23, 1890.   He left a widow, but it does not appear whether any children survived him. The date of his death is disclosed by the deposition of the witness Mrs. Susan Aubrey, taken June 6, 1895, prior to the trial of this cause October 9, 1895.

After the jury had been empaneled, and before the trial commenced, the defendant's attorneys suggested to the court the death of the plaintiff W. H. Mask, and asked that the trial should proceed in the name of the surviving plaintiffs.   Thereupon counsel for plaintiffs moved a continuance of the cause, in order to make the heirs of Mask parties plaintiff.   Their motion was accompanied with the statement that they were first apprised of the death of Mask by the suggestion of defendants' counsel.

The judgment provides that nothing therein "shall be construed as preventing the heirs of the deceased plaintiff W. H. Mask from prosecuting this suit to recover their interest in the lands in controversy, should they so desire."

The deceased plaintiff was a tenant in common with the survivors, and if the surviving cotenants had any title to the land, the defendants were strangers.   In such a case it is not necessary to make the repre-

sentatives of the deceased parties to the action.   Watrous v. McGrew, 16 Texas, 506.

We discern no ground for complaint by the appellants in the refusal of the court to continue the cause, under the facts stated.

5.   The excluded testimony by deposition which is the subject of the seventh assignment of error was supplied by the same witness in his oral examination, on page 148 of the record.   The assignment is without merit.

6.   The course of the defendants' testimony is such as to assail not only the identity but the existence of a man named William Wallace as having lived in Crawford County, Georgia, or as having left that county for the Republic of Texas, as claimed by the appellants.   In other words, one of the issues of fact made by the record is an issue of fiction and fabrication in regard to the existence of such a man.   Testimony relied upon by the defendants points to one Col. Hurlock as a party to this fabrication.

In support of their theory, the appellees read the deposition of L. W. Hicks, to the effect that he was eighty-four years of age; had resided in Crawford County, Georgia, since 1824; had been sheriff of the county; had represented it two terms in the Legislature; that no one of the name of William Wallace went from Crawford County, Georgia, in 1835 to fight the Mexicans; that there never was any report or tradition to that effect; and that he never heard of such a thing until the coming of Col. Hurlock in 1893.   The testimony of Hicks was corroborated by that of several witnesses quite similarly situated.

It is urged that the evidence is hearsay, is immaterial, and is not admissible for any purpose.   We think otherwise in regard to the issue here presented.   The question is one of nonentity, and naturally calls for testimony of a negative character.   Such evidence is necessarily the best of which the issue is susceptible.   It is manifestly impossible to resort to the members of the family with reference to the reputation or tradition concerning the person inquired about, because if such a person be a myth he is without family relations.   The issue is not one of identity or of pedigree, but of existence or entity, and rules in reference to pedigree and identity cannot therefore be said to apply.

7.   Complaint is made in the ninth assignment that the court should have excluded the answer of the witness Hicks to the third cross-interrogatory, on the ground that the answer is argumentative.   The bill of exceptions does not set out the interrogatory, and we are hence unable to say that the answer was not properly responsive to the question.

Complaint is also made in this connection that the court should for the same reason have excluded the answer of this witness to the fifth cross-interrogatory, which is as follows: "Describe this Thick-Lip Wallace that you have been testifying about.  How thick was his lip? What was the cause of his thick lip?  Did you ever hear him called Gizzard-Lip, Rose-Lip, or Leather-Lip?"  Answer: "I described him on direct interrogatory.  His lip was so thick that he became so noted

and so easily detected that you can trace him wherever he went by his lip. He had his lip in everything. Did you ever see anything turned wrong side out, that was Wallace's lip."

While the expression, "He had his lip in everything," may be regarded as to some extent argumentative, it is at the same time emphatically descriptive; and we regard the entire answer as giving a description responsive to the question. The assignment is overruled.

8. The objection urged in the eleventh assignment of error to the statement of Hurlock to a witness Mask is not believed to be sound. The statement tended to connect Hurlock with an attempt to persuade or influence the testimony of Mask. Evidence elsewhere introduced indicated that Hurlock was a party in interest in the result of the suit; that he was the agent of the appellants, and was employed by them to procure evidence in the case. We think the testimony was pertinent on the issue of fabrication already adverted to.

9. The special act of the Legislature, the admission of which is complained of in the thirteenth assignment, is not set out in the bill of exceptions, nor in the statement of facts, and we are unable to review the ruling of the court in admitting it.

10. W. A. A. Wallace testified for the defendants, over the plaintiffs' objection, that he remembered the contents of a letter written by Samuel Wallace to Rebecca Jane Wallace, now Seahorn, from Goliad, Texas, in 1836. The witness and Samuel Wallace were brothers of Rebecca, and were cousins of Willam Wallace from Rock Bridge County, Virginia, under whom the defendants claim. The letter was to the following purport: "Sis Bec: This may be the last letter you will receive from me. We are in a bad situation, living on beef entirely, a large Mexican army near. I left my trunk among others at Velasco, with John Adriance, with some money. Cousin Willam Wallace is here with the Georgia battalion. Adieu. Samuel Wallace."

Mrs. Seahorn testified in effect to the loss of the letter, and to a diligent search for it. The evidence was admissible on the question of pedigree, and we cannot say that the court, under the circumstances of the case, erred in holding that its loss was sufficiently proved to admit secondary evidence of its contents. 1 Greenleaf on Evidence, sec. 558.

11. The fact to which W. A. A. Wallace, or Big-Foot Wallace, was permitted to testify, that the cause of his coming to Texas in 1837 was the letter written by his brother Samuel to his sister Rebecca and the massacre of his brother at Goliad, and the further fact to which the witness Joseph B. Wallace, a brother of Samuel and a cousin of William Wallace, was permitted to testify, to the effect that the last his father's family ever heard of William Wallace was at Goliad, were admissible as showing the repute in the Wallace family and on the question of pedigree. The letter referred to by Joseph B. Wallace is manifestly the same as the one to which we have already adverted, and the contents of which were properly proved. The sixteenth and seventeenth assignments of error are thus overruled.

12.   We decline to reverse the judgment because the court admitted in evidence over the objection of the plaintiffs the testimony of Samuel Wallace that his brother William Wallace was killed at Goliad.   It is manifest from the deposition of this witness that this statement was a conclusion on his part founded upon facts to which he elsewhere testifies, and the evidence as to which was not objected to by the defendants.

So, we decline to condemn the action of the court in admitting over a similar objection the statement of Mrs. Rebecca Seahorn that her brother Samuel Wallace was killed near Goliad.   Her deposition discloses that this fact is stated by her upon family history, and upon the information contained in the letter to which we have already referred, and written a few days before the massacre, that her brother, within her knowledge, started for Texas from Rock Bridge County in the fall of 1835 and that she heard of his death in 1836.   Besides, the evidence that Samuel Wallace perished with Fannin is indicated by the recitals in the bounty warrant for 960 acres issued to his heirs by James S. Gillette August 17, 1855.

It will be noted that the hearsay testimony upon which rest the statements of these witnesses was not objected to by the defendants; and the simple fact that it was hearsay is not sufficient, in the absence of objection, to justify the exclusion of the statement, because it is not made to appear that, if the witnesses' sources of information for this statement were based on hearsay, it was of such character as to be excluded from the rule which admits hearsay evidence from the necessity of the case, when used for the purpose of identifying a deceased person as a member of the family, and thus to be in the nature of pedigree or closely connected therewith.   Byers Bros. v. Wallace, 87 Texas, 512.

13.   Upon the authority of this case, and the express rulings therein, the twelfth, fourteenth, eighteenth, twentieth, twenty-second, twenty-fifth, twenty-eighth, and thirty-first assignments of error are overruled.

14.   Evidence to the effect that the Virginia Wallace stole his sister's earrings and gave them to a negro girl, and that, as a deposing witness understood, he stole a horse when he left Virginia, was properly excluded.   The testimony did not tend to disprove the fact of service or death in the Texas army.   It was irrelevant to the issue.

15.   The testimony showing an agreement between G. W. Burkett and the plaintiff W. C. Wallace for the assistance of Burkett in the recovery of the lands, and a further agreement by Burkett with Hurlock, by which the latter was employed to look up testimony, in consideration of a contingent interest in the lands, supplemented by evidence that Hurlock had been assisting in looking up evidence in accordance with this agreement, was admissible under the issue of fabricated heirship already adverted to, and as tending, in connection with other testimony introduced, to show that the litigation was a fraudulently speculative enterprise.

16.  No reversible error is shown in the twenty-sixth assignment, complaining of the court's refusal to permit the plaintiffs to show by the witness Ben Parker that after he returned from Austin in 1855 Judge Harrell came to him and asked him how the Wallace letters (which had been previously delivered to the witness) compared with the muster roll at Austin.  The witness Parker was himself on the stand and testified personally as to the investigation in question at the instance of the plaintiff W. C. Wallace and as to its result.  In other words, the statements which it was proposed to show that Parker had made to Judge Harrell in 1855 he directly made in all substantial respects to the jury.

17.  The remarks made by W. O. Davis, the attorney of the defendants, in his opening argument to the jury, consisting of a substantially correct statement of the contents of the official letters or reports by Gen. Sam Houston to Gov. Smith, dated December 26, 1835, and December 30, 1835, as shown in vol. 2, pp. 455-456, Yoakum's History of Texas, afford no ground of serious complaint.

18.  The action of the court in refusing special charges Nos. 1 and 2 requested by the appellants could not have injured them.  The right of recovery as defined in these instructions was contingent upon a finding by the jury that the plaintiffs were the heirs of William Wallace. As the verdict was against this contention, the condition did not arise under which the charges could have applied; and had they been granted, the appellants could have had no benefit from them.

19.  In the statement under their proposition asserting a right of recovery by virtue of their plea of res adjudicata and estoppel growing out of the suit in Denton County, and the judgment therein recovered by the appellants as plaintiffs against E. S. Day et al., no such reference is made to evidence in the record as would enable us to say that the plaintiffs could under the plea have possibly recovered a verdict or judgment in any sense substantially different from that which was rendered.  Indeed, no stress on the trial below seems to have been laid upon this plea.  The court neither of its own motion charged upon the issue, nor was it requested so to do.

20.  The witness John Houghawont was properly permitted to state that in the fall of 1837 W. A. A. (Big-Foot) Wallace left Virginia for the avowed purpose of avenging the death of William C. Wallace, his cousin, and of Samuel Wallace, his brother.  The testimony imports a declaration of purpose by Wallace at the time of his departure.  It appears that the witness accompanied Wallace and two others, his companions, a distance of twenty-two miles on their journey.  The testimony comes within the rule of res gestae.

21.  The evidence in this record is such that had the verdict been for the one party or the other to the litigation, it would not have been without support in the testimony.

This review of all the questions presented leads us to the conclusion that the judgment should be affirmed; and it is so ordered.  *Affirmed.*