## HEATON et al. v. GLOBE INDEMNITY CO.
### No. 9932.

Court of Civil Appeals of Texas.
Galveston.
March 22, 1934.

Rehearing Denied May 10, 1934.

Henderson, Copeland & Shenk, of Houston, for appellants.

Williams, Lee, Sears & Kennerly, W. H. Blades, and Robert N. Williams, all of Houston, for appellee.

LANE, Justice.

Mrs. Mary Heaton, surviving wife of Jesse Allison Heaton, deceased, brought this suit in behalf of herself and as next friend in behalf of Marcus Heaton, Dan Heaton, and Joel Heaton, minors, surviving children of Heaton, deceased, said suit being joined in by the law firm of Henderson & Copeland, attorneys for the Heatons. The suit is against the Globe Indemnity Company, a corporation.

Jesse Allison Heaton, deceased, hereinafter referred to as Jesse Heaton, suffered an injury on the 5th day of June, 1931, which resulted in his death on the same day. At the time of his injury and death he was an employee of the Houston Natural Gas Company, a "subscriber," as that term is used in the Workmen's Compensation Law of Texas (Vernon's Ann. Civ. St. art. 8306 et seq.). At and for some time prior to the death of Jesse Heaton, the Houston Gas Company held a compensation insurance policy, issued by the Globe Indemnity Company under the provisions of the Workmen's Compensation Act of Texas.

The plaintiffs alleged substantially the facts as stated above and that at the time Jesse Allison Heaton met his said injury and death he was engaged in the performance of his employer's business, acting within the scope of his employment; that prior to his injury and death he had been instructed by his employer to locate one Harrison, a former employee of his employer, whom his employer desired to re-employ on the day following such instructions; that in pursuance of such instructions, Jesse Heaton, on the afternoon following such instructions, sought to locate said Harrison, to inform him of his employer's desire, and while so engaged he suffered his said injury and death; that due and timely notice was given of his injury and death and in due time plaintiffs filed their claim for compensation by reason of the injury and death of Jesse Heaton, with the Industrial Accident Board of Texas; that on the 5th day of November, 1931, the accident board rendered its final award on said claim, and thereafter, and in due time, plaintiffs gave notice to said board that they would not abide by such award; that thereafter, and in due time, plaintiffs filed this suit in a court of competent jurisdiction.

Plaintiffs alleged that it had become necessary for them to employ attorneys to prosecute claim and that they had employed Devereaux Henderson and James A. Copeland for such purposes and had agreed to assign

to said attorneys one-third of any recovery had by them.

They prayed for a recovery of $5,774.40, or for such sum less 5 per cent. if paid in cash. They prayed for a lump sum settlement.

Defendant answered by general denial, and specially denied that the deceased, Jesse Heaton, at the time he met death, was acting in the scope of his employment; and alleged that he was injured by the act of a third person because of reasons personal to him which was in no way connected with the employment of Heaton.

One H. A. Harrison, on direct examination, testified that prior to the death of Jesse Heaton, he, Harrison, was employed by the Houston Natural Gas Company, at the same time Jesse Heaton was employed by the same company; that he was present at the time said Heaton was killed; that he was not employed by the gas company at the time Heaton was killed; that Jack Larson was foreman immediately over Mr. Heaton and the witness and that Cody Gibbons was Larson's superior, he being assistant general manager under E. S. George, general superintendent; that W. B. Trammell was general manager; that when he was let out of employment, three weeks before Heaton was killed, Mr. Trammell told him that he was not discharged but thought best that he should lay off a little while until a certain rumor about him had passed over, and then he would call him back; that at about 5:30 p. m. on the 5th day of June, 1931, he saw Jesse Heaton; that just before they met Heaton said: "Hello Harrison" "Wait a minute" "I have been looking for you" "I want to talk to you"; that he then told witness that the boss had told him to look witness up, and tell him to come back, to report back on the job in the morning to work; that just after this conversation one W. E. Wells shot and killed Jesse Heaton; that the shot that killed Heaton was intended for the witness and accidentally hit Heaton.

Testifying further, the witness said· that Jack Larson had authority to hire and discharge employees and instruct them what to do.

While the witness was testifying, he was required to give answers to questions propounded with reference to some unfavorable publications or rumors detrimental to his character which tended to discredit him as a witness.

Marcus Heaton, son of the deceased Jesse Heaton, one of the minor plaintiffs, took the witness stand as a witness for the plaintiffs and offered to testify that about 9 o'clock on the night before his father was killed he and his father were in a room at their home where they both slept; his father, while in bed, asked witness if he had seen Harrison and witness told him that he had not and asked him if Harrison was not working and he said no; that he wanted to see Harrison about going to work and then he asked witness if he knew where he could find Harrison; and that witness replied that he did not; that his father said that Jack Larson wanted Harrison back on the job; that Jack, his boss, wanted him to see Harrison with reference to work; that the words that his father used on the occasion in question, as near as witness could recall, was that he asked witness if he had seen Harrison, and after being told that he had not seen Harrison he said, "Jack wanted me to get him to come back to work."

The proffered testimony of the witness, Marcus Heaton, was refused upon objection of counsel for defendant that it was hearsay, secondary, and inadmissible.

The cause was tried before a jury, which, in answer to special issues submitted by the court, found that the injury of Jesse Heaton on the 5th of June, 1931, was not sustained by him while he was in the course of his employment.

Upon the verdict of the jury the court rendered judgment that the plaintiffs take nothing by their suit and that defendant go hence with its costs expended.

The plaintiffs have appealed.

■ It is, apparent from what has been stated that the sole and only question involving the right of plaintiffs to recover was whether Jesse Heaton was, at the time he was shot and killed, engaged in the work of his employer, the Houston Natural Gas Company.

For reversal of the judgment, appellant contends that the court erred in refusing ·to permit Marcus Heaton to testify that his father, Jesse Heaton, on the night before he was shot and killed had told him that Jack Larson, foreman over Jesse Heaton, deceased, had that day instructed him, Jesse Heaton, to find H. A. Harrison and tell him to report for work for the Houston Natural Gas Company. They insist that the rejected testimony was admissible as a part of the res gestæ; that it tended to show that Jesse Heaton was at the time of his injury and death in the act of carrying out the instructions of his superior, Jack Larson; and that

it tended to support the testimony of Harrison, given in behalf of the plaintiffs, whose credibility as a witness had been attacked by counsel for the defendant, by answers drawn from the witness, Harrison, on cross-examination.

We sustain the contention that the court erred in rejecting the proffered testimony of Marcus Heaton. If, as a fact, Jesse Heaton, at the time he told his son Marcus that his superior, Jack Larson, had told him to look up Harrison to go to work for his employer and at the same time sought information from Marcus as to where Harrison could be found, he was at such time acting within the course of his employment. We think such proffered testimony constituted part of the res gestæ and was admissible as evidence. "All acts and declarations which constitute a part of the res gestæ, are admissible in evidence, and this is true though they would otherwise come within the rule excluding hearsay evidence, or self serving declarations." 17 Texas Jurisprudence, § 256.

The element of time is important in determining question of spontaneity, since it is obvious that a declaration or act is usually spontaneous in proportion as it is near in point of time to the occurrence that called it forth. But time is not controlling. 17 Texas Jurisprudence, § 262, pp. 623–626.

"The declarations which form a part of the res gestæ may either precede the act or transaction in question, or may follow it." 17 Texas Jurisprudence, p. 624, and cases cited in note 1.

In McGowen v. McGowen, 52 Tex. at page 664, it is said:

"The res gestæ differs according to the circumstances of the particular case. It may be embraced within the brief compass of time which comprises the duration of the principal act or transaction itself, or it may extend over a much longer period of time, if the transaction be one of a continuing character.

"As said by the Supreme Court of California, in People v. Vernon [35 Cal. 49, 95 Am. Dec. 49]: 'Declarations, to be a part of the res gestæ, are not required to be precisely concurrent in point of time with the principal fact. If they spring out of the principal transaction—if they tend to explain it—are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of deliberate design—then they may

be regarded as contemporaneous, and are admissible.' "

In 10 R. C. L., § 157, p. 974, it is said:

"There is a class of evidence which forms an exception to the general rules of hearsay and relevancy, termed the res gestæ, which is admitted, although it is in fact hearsay or apparently irrelevant, because without it a clear understanding of the nature of the litigated act cannot be had, and to obtain this should of course be the prime object of the rules of evidence."

Again: "It is not easy, always, to determine when a declaration is a part of the res gestæ. It is dependent upon the particular circumstances under which the declaration is made. The courts recognize the difficulty of laying down upon this subject a rule that may be applied in every case. The tendency of recent adjudications is to extend rather than to narrow the scope of the introduction of evidence as part of the res gestæ."

At the time Marcus Heaton sought to testify, it had already been shown by the testimony of Harrison, that the deceased, Jesse Heaton, met Harrison near Heaton's home, on the day he was killed, it being the day after the conversation between father and son is alleged to have taken place; that the deceased spoke to Harrison, and told him that he, Heaton, had been looking for him and that his, Heaton's, boss had instructed him, Heaton, to look for Harrison and tell him to report for work for the Houston Natural Gas Company, the employer of Heaton.

The testimony of Harrison, coupled with the testimony of Marcus Heaton, which was excluded, tends to show that Jessie Heaton, deceased, had previously been instructed by his superior, Jack Larson, to locate Harrison and tell him to report for work for the Gas Company. It tends to show that deceased, from the time he received his instructions from his superior to locate Harrison, had a continuing duty to locate Harrison if he could. The effort to locate Harrison was the act in which he was engaged, when he asked Marcus, his son, if he knew where he could find Harrison, and at the time he met Harrison the next day.

Having reached the conclusion that the court erred in excluding the proffered testimony of Marcus Heaton, we conclude that the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

Reversed and remanded.