## PRATER v. TRADER$ & GENERAL INS. CO.
## No. 1605.

Court of Civil Appeals of Texas. Waco.
May 23, 1935.

Rehearing Denied June 20, 1935.

Carl C. Mays and Geo. W. McHam, both of Dallas, for appellant.

Lightfoot & Robertson, of Fort Worth, Collins & Fairchild, of Lufkin, and Stone, Lassiter & Wells, of Henderson, for appellee.

ALEXANDER, Justice.

This action was brought to recover under the Workmen's Compensation Act. G. W. Prater, the injured employee against whom a verdict was instructed in the lower court, was employed as a pumper in the East Texas oil field. It seems that on the lease where he worked the oil would flow from the well into a tank on the premises, but had to be pumped from the tank into the pipe line. It was Prater's duty to operate the pump and to keep it in repair. One night, while riding in an automobile with Jess Farley and others en route between the lease and the town of Arp, Prater was injured as the result of an automobile collision. It was material to prove Prater's purpose in going to Arp on the occasion in question in order to show that he sustained his injuries while in the course of his employment. As a result of the accident, Prater lost his memory and could not give any evidence on this phase of the case. The court permitted Jess Farley, the driver of the automobile, to testify that he was a workman for another employer on a neighboring lease and lived about one-half mile from Prater, that the accident happened about 1 o'clock in the morning on the public highway eight or nine miles from the lease while they were driving from Prater's house to Arp, and that at the time of the accident they were on their way to the Continental Supply House at Arp. If this witness had been permitted to do so, he would have further testified, in substance, as follows: "About 8 o'clock that night Prater came to the lease where I was working and told me that his pump had broken down and he had to go and get some parts for it. He said he needed the parts so he could pump oil early the next morning before the big pumps got on the main line. He said he couldn't pump with them and he wanted to get a tank out before they put the big pumps on. He said he had to go to Arp to the Continental Supply House to get the parts. He asked me if I would carry him in my automobile after I got off of tow-

er. He said his car wouldn't run. I told him I would. At about 11:30 P. M., I met him at his house. We went into his house and ate some and he then told his wife that I was going to take him to Arp to get those parts for the pump. We left the house on the way to Arp and had the accident while en route. As we left the house his wife asked him how long we would be gone and he said, 'just a little bit.' "

The court excluded this evidence on the ground that it was hearsay. Mrs. Prater, appellant's wife, would have testified as follows: "On the day in question I had been to my sister's house and had come back by the lease in Mr. Farley's car and picked up my husband at about 11:30 o'clock P. M. As we rode home he told me there was something wrong with the pump and he had to buy some parts for it before he could fix it. He said he was going to get the parts for the pump at Arp. He said Mr. Farley was going to take him to Arp as soon as he got off of tower. Later when he and Mr. Farley left the house in the car, he told me that they were going to Arp to get some parts for the pump. At that time he had on his oily clothes."

The court excluded this evidence for the same reason. After the exclusion of this evidence, there being no other proof to show that at the time of his injury Prater was on a mission for his employer, and therefore in the course of his employment, the court instructed a verdict for the defendant.

The declarations made by Prater on the occasions in question were not made in the presence of the opposite party and were not sworn to nor given under such circumstances as to allow for cross-examination, and consequently they were, in a sense, hearsay. However, we believe that they were admissible under a well-established exception to the hearsay rule. It has long been a rule of evidence that the declarations made by a party at or about the time of his departure on a journey are admissible to establish the destination or purpose of the journey. 22 C. J. p. 286, par. 307; Jones, Commentaries on Evidence (2d Ed.) vol. 3, p. 2243, § 1220; Wigmore on Evidence (2d Ed.) vol. 3, p. 696, par. 1725.

Some of the authorities hold that such evidence is admissible under the res gestæ rule. Texas Employers' Ins. Ass'n v. White (Tex. Civ. App.) 68 S.W.(2d) 511, par. 7; Wallace v. Byers, 14 Tex. Civ. App. 574, 38 S. W. 228; Jim West v. State, 2 Tex. 460; Koonse v. Missouri Pacific R. Co., 322 Mo. 813, 18 S.W.(2d) 467, par. 14; Central of Georgia Ry. Co. v. Bell, 187 Ala. 541, 65 So. 835, par. 7; Chicago, M. & St. P. Ry. Co. v. Chamberlain (C. C. A.) 253 F. 429; Tilley v. Commonwealth, 89 Va. 136, 15 S. E. 526; State v. Garrington, 11 S. D. 178, 76 N. W. 326, par. 3; Harris v. State, 96 Ala. 24, 11 So. 255; State v. Cross, 68 Iowa, 180, 26 N. W. 62; Territory v. Couk, 2 Dak. 188, 47 N. W. 395.

We believe, however, that the evidence is admissible independently of the res gestæ rule, for the simple and sufficient reason that it is the best evidence available to prove the fact at issue. In such cases the fact at issue is the purpose of the journey. The purpose of the journey is wholly dependent on the state of the mind of the declarant, and the declarations made by him are the best evidence of the state of his mind. It is the natural and usual thing for one who is preparing to go on a mission to declare to his associates the purpose of his errand. Such declarations are relied on daily in the business and social world. When they purport to evidence the existing state of mind of the declarant, they are but the natural expressions of the normal individual under such circumstances. When thus made before a motive to fabricate has arisen, they are as reliable and dependable as any other evidence usually relied on in the trial of a law suit. In order to render such declaration admissible, it is not indispensable that it be so closely connected with the act of taking the journey as to form a part thereof. It is sufficient if the declaration appears to have been made in a natural manner without circumstances of suspicion and purports to evidence the declarant's existing state of mind with reference to the purpose of the proposed journey and there be such proximity between the time of the making of the declaration and the incident involved in the suit as, under the circumstances, will furnish reasonable assurance that there has been no change of purposes or designs in the meantime. Wigmore on Evidence (2d Ed.) vol. 3, p. 701; Id. p. 696, § 1725; Hunter v. State, 40 N. J. Law, 495; Commonwealth v. Trefethen, 157 Mass. 180, 185, 31 N. E. 961, 963, 24 L. R. A. 235; Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 912, 36 L. Ed. 706; Lake Shore & M. S. Ry. Co. v. Herrick, 49 Ohio St. 25, 29 N. E. 1052; Inhabitants of Gorham v. Inhabitants of Canton, 5 Me. (5 Greenl.) 266, 17 Am. Dec. 231; Mathews v. Great North-

ern Ry. Co., 81 Minn. 363, 84 N. W. 101, 83 Am. St. Rep. 383.

In Hunter v. State, supra, the court, in giving its reason for admitting in evidence the statements made and letters written by the deceased at Philadelphia on the afternoon before the night of the murder that he was then going to Camden with the accused on business, said: "In the ordinary course of things it was the usual information that a man about leaving home would communicate for the convenience of his family, the information of his friends, or the regulation of his business. At the time it was given, such declarations could, in the nature of things, mean harm to no one; he who uttered them was bent on no expedition of mischief or wrong, and the attitude of affairs at the time entirely explodes the idea that such utterances were intended to serve any purpose but that for which they were obviously designed. * * * If it was in the ordinary train of events for this man to leave word, or to state where he was going, it seems to me it was equally so for him to say with whom he was going."

In Commonwealth v. Trefethen, supra, the court, in discussing a similar proposition, said: "The fundamental proposition is that an intention in the mind of a person can only be shown by some external manifestation, which must be some look or appearance of the face or body, or some act or speech; and that proof of either or all of these, for the sole purpose of showing the existing state of mind or intention [of the person is proof of a fact from which the state of mind or intention], may be inferred. * * * Although evidence of the conscious declarations of a person as indications of his state of mind has in it some of the elements of hearsay, yet it closely resembles evidence of the natural expressions of feeling, which has always been regarded in the law not as hearsay, but as original evidence, * * * and when the person making the declarations is dead, such evidence is often not only the best, but the only, evidence of what was in his mind at the time. * * *"

In Mutual Life Ins. Co. v. Hillmon, supra, the court, in discussing the admissibility of letters written by a party expressing his intentions to make a journey, said:

"A man's state of mind or feeling can only be manifested to others by countenance, attitude, or gesture, or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence of its proper tokens is equally competent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party.

"The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own testimony that he then had that intention would be. After his death there can hardly be any other way of proving it, and while he is still alive his own memory of his state of mind at a former time is no more likely to be clear and true than a bystander's recollection of what he then said, and is less trustworthy than letters written by him at the very time and under circumstances precluding a suspicion of misrepresentation."

In the case at bar, the fact that the injured employee actually made the declarations offered in evidence is properly vouched for by competent testimony. The first declaration offered in evidence was made by him while he was arranging for transportation and only a few hours before the journey was begun. The second declaration was made at the very time he was in the act of leaving on the journey. Under the authorities above cited, these declarations were admissible in evidence. If the trial judge had thought them admissible, he doubtless would not have given an instructed verdict for the defendant.

The judgment of the trial court is reversed, and the cause remanded for a new trial.